MARTIN M. O'DONNELL *vs.* TOWN OF NORWOOD.

Norfolk.    October 8, 1963. — November 1, 1963.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*School and School Committee.*

A public school teacher who was lawfully suspended by the school com-
mittee under G. L. c. 71, § 42, but was not dismissed and resumed his
work upon termination of the suspension was not entitled to his salary
during the period of suspension.

CONTRACT. Writ in the Superior Court dated May 31,
1960.

The action was reported by *Pecce,* J.

*James P. Lynch, Jr.,* for the plaintiff.

*Walter J. Gotovich,* Town Counsel, for the defendant.

SPIEGEL, J. This is an action of contract by which the
plaintiff, a teacher and submaster in the public school sys-
tem of the defendant, seeks to recover salary for the period
from September 8, 1958, to December 29, 1958. A judge of
the Superior Court reported the case without decision upon
the pleadings and a statement of agreed facts.

The plaintiff is a school teacher and submaster in the
Norwood public schools, serving at the discretion of the
school committee ("on tenure"); he was lawfully sus-
pended from his duties on September 8, 1958, by the com-
mittee upon its finding of insubordination. On December
21, 1958, the school committee voted to terminate the sus-
pension and to return him to his duties on December 29,
1958. The plaintiff, during the period of his suspension,
was "ready, willing and able" to perform his duties. On
December 29, 1958, the defendant resumed his work as
teacher and submaster. During the period of the plain-
tiff's suspension he was not paid any salary by the defend-
ant. If the plaintiff had been paid during the period of his

suspension he would have received $2,420.  The plaintiff
was not dismissed from the school system either upon or
after the termination of his suspension.

The sole issue before us is whether a school teacher, sus-
pended for cause but not dismissed, is entitled to be paid
his salary during the period of his suspension.

The plaintiff bases his right to recovery on the provisions
of G. L. c. 71, § 42, as amended through St. 1956, c. 132, § 2.[1]
He maintains that the pertinent language "determinative
of the instant case in his favor" is contained in the last
sentence of the section, which reads: "No teacher or super-
intendent who has been lawfully dismissed shall receive
compensation for services rendered thereafter, or for any
period of lawful suspension followed by dismissal."

The plaintiff, in his brief, argues at some length that the
"statutory history" of the act favors his interpretation.
We have examined the legislative history of this statute and
are not convinced that the plaintiff's argument is sound.

---

[1] "The school committee may dismiss any teacher, but no teacher and no
superintendent, other than a union superintendent and the superintendent of
schools in the city of Boston, shall be dismissed unless by a two thirds vote of
the whole committee.  In every such town a teacher or superintendent em-
ployed at discretion under the preceding section shall not be dismissed, except
for inefficiency, incapacity, conduct unbecoming a teacher or superintendent,
insubordination or other good cause, nor unless at least thirty days, exclusive
of customary vacation periods, prior to the meeting at which the vote is to be
taken, he shall have been notified of such intended vote; nor unless, if he so
requests, he shall have been furnished by the committee with a written charge
or charges of the cause or causes for which his dismissal is proposed; nor
unless, if he so requests, he has been given a hearing before the school com-
mittee which may be either public or private at the discretion of the school
committee and at which he may be represented by counsel, present evidence
and call witnesses to testify in his behalf and examine them; nor unless the
charge or charges shall have been substantiated; nor unless, in the case of a
teacher, the superintendent shall have given the committee his recommendations
thereon.  The change of marital status of a female teacher or superintendent
shall not be considered cause for dismissal under this section.  Neither this
nor the preceding section shall affect the right of a committee to suspend a
teacher or superintendent for unbecoming conduct, or to dismiss a teacher
whenever an actual decrease in the number of pupils in the schools of the town
renders such action advisable.  In case a decrease in the number of pupils in
the schools of a town renders advisable the dismissal of one or more teachers, a
teacher who is serving at the discretion of a school committee under section
forty-one shall not be dismissed if there is a teacher not serving at discretion
whose position the teacher serving at discretion is qualified to fill.  No teacher
or superintendent who has been lawfully dismissed shall receive compensation
for services rendered thereafter, or for any period of lawful suspension fol-
lowed by dismissal."

The plaintiff theorizes that the form of the predecessor section in St. 1914, c. 714, § 4, "is clearer than the present wording . . . although the sense is the same: '. . . [I]f the teacher or superintendent so suspended is subsequently dismissed because of such conduct, he shall not receive any salary for the period of his suspension.'" The plaintiff maintains that because the "sense" of the wording is the same in the present statute we must conclude that this was a mandate from the Legislature to the effect that "a teacher who is suspended is entitled to pay unless the suspension is followed by dismissal."

In our view the sole purpose of this language is to prevent the payment of salary to a dismissed teacher. It does not compel the payment of salary during the period a teacher is lawfully suspended for misconduct, where the suspension is not followed by dismissal. We note that, at the same time the language that is now the last sentence of § 42 was introduced into the statute,[2] the Legislature also inserted the following language, "Neither this nor the preceding section shall affect the right of a committee to suspend a teacher . . . for unbecoming conduct . . . ." It seems obvious that the purpose of this language was to preserve rather than limit an existing right. Indeed, the earlier version of this language said: "Nothing herein contained shall be construed as limiting the right of a school committee to suspend a teacher . . ." (St. 1914, c. 714, § 4).

Prior to this statute, the right of the school committee to dismiss a teacher for any good cause appears to have been absolute. *Knowles* v. *Boston,* 12 Gray, 339, 340. We accept the thesis that the power to dismiss includes the power to suspend. See *Goldsmith* v. *Board of Education of Sacramento City High Sch. Dist.* 66 Cal. App. 157, 163–164. It follows that at the time the statute was enacted school committees were vested with the power to suspend teachers for cause without salary. We have repeatedly held that the authority of a school committee to manage the

[2] See G. L. (1921) c. 71, § 42.

public schools is to be broadly interpreted. *McDevitt* v. *School Comm. of Malden,* 298 Mass. 213, 214. *Davis* v. *School Comm. of Somerville,* 307 Mass. 354, 362.

The plaintiff also urges us to adopt his view because the practical result is a "salutary safeguard" for the teacher and if we adopt the contrary view the "legislative intent and mandate could be thwarted by an unscrupulous [s]chool [c]ommittee through the use of the suspension device." It may well be a "salutary safeguard" for the teacher but it could hardly be a "salutary safeguard" for the public or for the members of the school committee in conducting the school system effectively. We are asked to hold as a matter of law that suspension not followed by dismissal must, in all conditions and circumstances, be accompanied by compensation during the suspension period. We are of opinion that such a holding would make a suspension almost useless as a disciplinary measure and tantamount to a leave of absence with pay. The practical effect of such an interpretation, it seems to us, would be to force a school committee to impose either the extreme penalty of dismissal in all cases of misconduct or no penalty at all. We do not believe that the Legislature intended to impose such a restriction. If the Legislature had intended that a teacher should be paid his salary during the period of his suspension, not followed by dismissal, it could have said so in clear and unmistakable language. "Where in the past the Legislature has limited the powers of school committees it has done so in express terms (G. L. [Ter. Ed.] c. 71, §§ 38–45), and it is to be expected that a radical departure from such previous policy would be expressed in clear language and not left to doubtful implication." *Davis* v. *School Comm. of Somerville, supra,* 363.

*Judgment for the defendant.*