ANNE DECANIO & others[1] vs. SCHOOL COMMITTEE OF BOSTON.

Suffolk.    March 4, 1970. — July 3, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*School and School Committee.    Constitutional Law*, Equal protection of
laws, Due process of law.    *Equity Pleading and Practice*, Appeal,
Exceptions.    *Error*, Whether error harmful.    *Law or Fact.    Evidence*,
Opinion: expert.

No appeal lay from an order for decree in a suit in equity.  [119]
Exceptions filed in a suit in equity were not open to review where there
   was no valid appeal and no bill of exceptions was filed or allowed.
   [119]
Public school teachers who were not serving on tenure and were not
   notified on or before April 15 of a school year in which they were em-
   ployed as teachers that they would not be employed for the following
   school year, and therefore under G. L. c. 71, § 41, as amended through
   St. 1956, c. 132, § 1, were "deemed to . . . [have been] appointed"
   for the following school year, did not thereby acquire any status pre-
   cluding the school committee from suspending and dismissing them
   during the following school year without a prior hearing.  [119–120]
In providing for a hearing before dismissal or suspension of a public
   school teacher on tenure, but not providing for a hearing before dis-
   missal or suspension of a teacher not on tenure, G. L. c. 71, §§ 42 and
   42D, violated no provision of the Constitution of the United States or
   the Constitution of Massachusetts.  [121, 123]
At the trial of a suit in equity by public school teachers who were not
   on tenure for a declaratory decree that their suspension and dismissal
   by the school committee without a prior hearing was unlawful, a
   discrepancy between the findings by the trial judge and the evidence
   as to when the plaintiffs had first learned of a plan of demonstrators
   in the execution of which the plaintiffs had joined was harmless.  [125]
At the trial of a suit in equity by public school teachers in which the
   ultimate issue was whether G. L. c. 71, §§ 42 and 42D were patently
   arbitrary in requiring a prior hearing before the suspension and dis-
   missal of teachers on tenure and not so providing for teachers not on
   tenure, such issue was a question of law, and there was no error in the
   exclusion of the conclusion thereon of an expert witness.  [125–126]

BILL IN EQUITY filed in the Superior Court on Septem-
ber 24, 1968.

---

[1] Constance L. Egan, Sandra Fenton, Charna Heiko, Mary Ellen Smith,
and Mary McDonough.

DeCanio v. School Committee of Boston.

The suit was heard by *Ford, J.*

*Lawrence D. Shubow* for Sandra Fenton & others.

*Michael L. Altman* for Anne DeCanio & others.

*Gerard A. Powers,* Assistant Corporation Counsel, for the School Committee of Boston.

KIRK, J. This is a bill for declaratory relief under G. L. c. 231A brought by six public schoolteachers in Boston against the school committee. The bill contains prayers requesting that the dismissal of the plaintiffs by the school committee be vacated, that the court declare "the rights, duties and status of the . . . [plaintiffs] as employees of the Boston School System," and for other equitable relief. The plaintiffs appealed from what was in effect an order for decree.

The basic facts of the dispute are these. The six plaintiffs were employed by the school committee as teachers in the Boston public schools for the school year beginning September 1, 1968, and ending August 31, 1969. None of the plaintiffs was serving "at discretion" (i.e. "on tenure") as that term is defined in G. L. c. 71, § 41. Each of the six was assigned to the Christopher Gibson School (Gibson School), an elementary school in the Dorchester district of Boston. The number of pupils registered at the Gibson School for that year was approximately 400, of whom over ninety per cent were of the black race. The Gibson School had become the focal point of a controversy concerning the extent of direct community participation or control which should be exercised or allowed in the schools. On September 4, 1968, the first day of classes, a demonstration took place at the Gibson School, in which various persons not connected with the school (except that some appear to have been parents of children in the school) entered the school building and each classroom, claiming to be the new principal and school staff. On the next day, September 5, the demonstrators returned. Police had been stationed at the door of the school to prevent the entry of unauthorized persons. Some of the demonstrators went behind the school to the yard where the children were being assembled for the start of classes, and

announced that there would be no school that day at the Gibson School.. Almost all the children were then led by the demonstrators to the Robert Gould Shaw House, a community center. The six plaintiffs, without informing, consulting with, or obtaining the consent of the superiors at the school, accompanied the demonstrators and the children to the Shaw House (described as a "liberation school") and conducted their classes there for the entire day.

The plaintiffs reported to the Gibson School on the next morning, September 6, but were refused admittance. They were informed that they had been suspended for seven days by the superintendent of schools for unauthorized absence on September 5.[2] The plaintiffs continued to teach at the Shaw House, where a considerable number of students from the Gibson School were still being taught.

On September 6, the school committee notified the plaintiffs of a hearing "on your suspension" to be held on September 11. No additional notice of charges against the plaintiffs was given. The plaintiffs, who were represented by counsel at the September 11 hearing, requested a continuance and a public hearing. The committee voted to terminate the plaintiffs' contracts effective thirty days after delivery of notice, and to suspend the plaintiffs for those thirty days for "conduct unbecoming teachers." The committee also voted to give the plaintiffs a closed hearing on September 25. The plaintiffs declined to attend that hearing and instead instituted this suit. The judge ruled that the plaintiffs, as probationary teachers not serving at the discretion of the school committee, had no statutory or constitutional right to a hearing.[3] The order for decree declared that the plaintiffs "were properly and lawfully dismissed from their employment as teachers by the . . . School Committee . . . on September 11, 1968, and are not entitled to reinstatement as teachers in the School Department of the City of Boston."

---

[2] The plaintiffs have waived any claim that this initial suspension was unlawful.

[3] Because of the lack of notice of the specific charges against the plaintiffs, the judge did not treat the plaintiffs' refusal to attend the offered hearing on September 25 as a waiver of the right to a hearing.

1. We are faced at the outset with a jurisdictional question not raised by the parties. No final decree was entered in the Superior Court. It is settled that an appeal from an order for decree has no standing. G. L. c. 214, § 19. *Carilli* v. *Hersey*, 303 Mass. 82, 87. *Moodie* v. *Jenks*, 329 Mass. 332. *Galvin* v. *Bay State Harness Horse Racing & Breeding Assn. Inc.* 343 Mass. 520, 522. See *George R. Whitten, Jr. Inc.* v. *County Commrs. of Essex*, 352 Mass. 579, 580–581. Since no bill of exceptions was filed or allowed, the plaintiffs' exceptions are not open to review. G. L. c. 231, § 113. *Sullivan* v. *Roche*, 257 Mass. 166, 170. *Bourget* v. *Holmes*, 297 Mass. 25, 26, 27. *Joyce* v. *Hickey*, 337 Mass. 118, 119. The issues, however, have been fully argued. There are presented questions of great importance both to the plaintiffs, who understandably desire a speedy determination of their status, and to the public. We therefore deem it advisable to express our opinion on the issues. See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731; *Gallagher* v. *Board of Appeals of Falmouth*, 351 Mass. 410, 415; *Metropolitan Dist. Commn.* v. *Department of Pub. Util.* 352 Mass. 18, 27; *City Manager of Medford* v. *State Labor Relations Commn.* 353 Mass. 519, 524; *Beaton, petitioner*, 354 Mass. 670, 672.

2. The plaintiffs' first contention is that they were entitled to a hearing on their suspension and dismissal under the provisions of G. L. c. 71, § 41, as amended through St. 1956, c. 132, § 1, which provides in relevant part: "Every school committee, in electing a teacher or superintendent, who has served in its public schools for the three previous consecutive school years, . . . shall employ him to serve at its discretion . . . . A teacher or superintendent not serving at discretion shall be notified in writing on or before April fifteenth whenever such person is not to be employed for the following school year. Unless said notice is given as herein provided, a teacher or superintendent not serving at discretion shall be deemed to be appointed for the following school year." The plaintiffs argue that the last two sentences of § 41 establish a special status for teachers who are "not serving at discretion" but are "deemed to be appointed

for the following school year." Each of the plaintiffs had been employed by the school committee in the previous school year. None was notified by April 15, 1968, that she was not to be employed for the next school year. The plaintiffs argue that, since they were "deemed to . . . [have been] appointed" for the 1968–1969 school year, the school committee did not have the authority to suspend or discharge them summarily.

The plaintiffs' argument lacks merit. It was long "the law that a school committee could discharge a teacher at any time. St. 1844, c. 32. *Knowles* v. *Boston,* 12 Gray, 339. The changes made by . . . [G. L. c. 71, §§ 41, 42] in securing permanency of tenure and requiring certain procedure for a valid discharge relate only to teachers who are 'on tenure,' and do not apply to one employed for a single year." *Pulvino* v. *Yarmouth,* 286 Mass. 21, 24. See *Nester* v. *School Comm. of Fall River,* 318 Mass. 538. The last sentence of § 41 was added by St. 1953, c. 372. That sentence does not purport to grant any new rights to a hearing, or to establish any intermediary status between "tenure" and "nontenure" teachers. It provides merely that the absence of notice to the contrary by April 15 constitutes an election (see G. L. c. 71, § 38) of the teacher for the following year. When taken together with the preceding sentence, its effect is to relieve the school committee of the burden of notifying every nontenure teacher of his reappointment, and also to afford those teachers who are not reappointed adequate opportunity to make plans. There is no express abridgment of the power of the school committee to dismiss or suspend during the school year a teacher who has been elected but is not serving "at discretion." "Where in the past the Legislature has limited the powers of school committees it has done so in express terms (G. L. [Ter. Ed.] c. 71, §§ 38–45), and it is to be expected that a radical departure from such previous policy would be expressed in clear language and not left to doubtful implication." *Davis* v. *School Comm. of Somerville,* 307 Mass. 354, 363. *O'Donnell* v. *Norwood,* 346 Mass. 394, 397.

3. The plaintiffs' principal contention is that their suspension and dismissal, without adequate notice of the charges against them and a prior hearing, deprived them of due process and equal protection of the laws. The gist of the argument is that a governmental agency may not constitutionally discharge *any* employee, regardless of his probationary status, without first providing him an opportunity to be heard; and that G. L. c. 71, §§ 42 and 42D, which grant the right to a hearing on discharge or suspension only to teachers on tenure, deny probationary or nontenure teachers the equal protection of the laws.

The plaintiffs cite in support of their argument a number of cases which hold that before a regulatory agency may deny a person permission to engage in a lawful occupation the agency must afford that person the opportunity for a hearing.[4] We think those cases are inapposite. What is concerned here is not an "interference with such persons' freedom of employment and business activity." *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 498. Rather it is the decision by an employer whether to continue the services of an employee who is on a probationary basis. See *Willner* v. *Committee on Character & Fitness*, 373 U. S. 96, 103 and fn. 2. See also *Cafeteria & Restaurant Wkrs. Union, Local 473* v. *McElroy*, 367 U. S. 886, 896; *Gardner* v. *Broderick*, 392 U. S. 273, 277–278. Most of the cases in which the question has been considered have concluded that in the absence of a statute to the contrary a probationary teacher may be dismissed without a hearing. See, e.g., *Brooks* v. *School Dist. of Moberley, Mo.* 267 F. 2d 733, 739 (8th Cir.), cert. den. 361 U. S. 894; *People ex rel. Fursman* v. *Chicago*, 278 Ill. 318, 325–362; *People ex rel. Thomas* v. *Board of Educ. of Chicago*, 40 Ill. App. 2d 308; *Zimmerman* v. *Board of Educ. of Newark*, 38 N. J. 65, 69–70; *Albury* v. *New York City Civil Serv. Commn.* 32 App. Div. 2d (N. Y.)

---

[4] *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491 (right to operate pharmacy). *Goldsmith* v. *United States Bd. of Tax Appeals*, 270 U. S. 117 (right to practise accounting). *Schware* v. *Board of Bar Examrs.* 353 U. S. 232. *Willner* v. *Committee on Character & Fitness*, 373 U. S. 96 (right to practise law.)

895, and cases cited; *Rees* v. *Murray City Bd. of Educ.* 6 Utah 2d 196. See also *Parker* v. *Board of Educ. of Prince George's County, Md.* 237 F. Supp. 222, 227 (D. Md.), and cases cited at fn. 5, affd. 348 F. 2d 464 (4th Cir.), cert. den. 382 U. S. 1030; 78 C. J. S., Schools and School Districts, § 204, at fn. 42. Cases from other States which the plaintiffs cite were concerned with statutes markedly different from G. L. c. 71, §§ 41, 42, 42D.[5] The plaintiffs have cited only three cases which held that a probationary teacher was constitutionally entitled to a hearing. The court in *Lucia* v. *Duggan,* 303 F. Supp. 112 (D. Mass.), reviewed the dismissal of a probationary teacher by a school committee in this Commonwealth. The plaintiff in that case had been dismissed for insubordination owing to his refusal to shave his beard, and for his conduct at a hearing before the school committee. The District Court refused to declare G. L. c. 71, §§ 42 and 42D, unconstitutional as denying nontenure teachers equal protection, because "[t]here are valid reasons for treating the probationary teacher differently from the permanent teacher." *Id.* at p. 119, fn. 5. The court further refused to hold that the plaintiff had a constitutional right to wear a beard. *Id.* at 117. Nevertheless, the court ruled that wearing a beard was "at least an interest of his . . . which may not be taken from him without due process of law." *Id.* at 118. Since the hearing given the plaintiff by the school committee had elements of both a rule-making and adjudicatory proceeding, it was held to be lacking in due process.

In *Roth* v. *Board of Regents of State Colleges,* 310 F. Supp. 972 (W. D. Wis.), and later in *Gouge* v. *Joint Sch. Dist. No. 1,* 310 F. Supp. 984 (W. D. Wis.), a United States District Court judge in Wisconsin held that under his interpretation of the holding of *Cafeteria & Restaurant Wkrs. Union, Local 473,* v. *McElroy,* 367 U. S. 886, a public school teacher or college professor, whether or not on tenure, cannot constitutionally be dismissed without notification of the rea-

---

[5] *Johnson* v. *Board of Educ.* 101 Ariz. 268. *School Dist. No. 1* v. *Thompson,* 121 Colo. 275. *Kuehn* v. *School Dist. No. 70,* 221 Minn. 443.

sons for the impending dismissal and the offer of a hearing. The gravamen of the holding in the *Roth* case was that "the decision not to retain a professor employed by a state university [or a teacher in a public elementary or secondary school as in the *Gouge* case] may not rest on a basis wholly unsupported in fact, or on a basis wholly without reason," 310 F. Supp. at p. 979, and that given the requirement of a reason, the professor or teacher must be afforded the opportunity to contest its basis. *Id.* at p. 980.

We are unsure of the precise constitutional basis for the holding of the District Court in the *Lucia* case. Nor are we persuaded by the reasoning of the court in the *Roth* and *Gouge* cases. As the opinion in the *Roth* case recognized, "it is reasonable that there be available a very wide spectrum of reasons, some subtle and difficult to articulate and to demonstrate, for deciding not to retain a newcomer or one who has not yet won sufficient respect from his colleagues." 310 F. Supp. at pp. 978–979. Such reasons are not amenable to proof at a hearing or to review by the judiciary. We therefore choose to follow the greater weight of authority. We note, however, that in the instant case the judge found, on sufficient evidence, that the school committee terminated the contracts of the six plaintiffs because of their leaving the Gibson School on September 5, 1968, and that the plaintiffs "were not in any way penalized by the [c]ommittee" on account of their views on community control of or participation in the direction of the school system. Cf. *Wieman* v. *Updegraff*, 344 U. S. 183; *Slochower* v. *Board of Higher Educ. of New York City*, 350 U. S. 551; *Keyishian* v. *Board of Regents*, 385 U. S. 589; *Pickering* v. *Board of Educ.* 391 U. S. 563.

We conclude that in providing for a hearing before dismissal or suspension of a teacher on tenure, but not for that of a probationary teacher, G. L. c. 71, §§ 42 and 42D, violate no provision of either the Constitution of the United States or the Constitution of Massachusetts. "[T]he interest of a government employee in retaining his job can be summarily denied. It has become a settled principle

that government employment, in the absence of legislation, can be revoked at the will of the appointing officer." *Cafeteria & Restaurant Wkrs. Union, Local 473* v. *McElroy,* 367 U. S. 886, 896. *Vitarelli* v. *Seaton,* 359 U. S. 535, 539. See *Nostrand* v. *Little,* 58 Wash. 2d 111, 123, appeal dism. 368 U. S. 436. In *Nelson* v. *County of Los Angeles,* 362 U. S. 1, a temporary county employee was discharged without a hearing for his refusal, in violation of State law, to answer questions before a congressional subcommittee. The Supreme Court held that it was bound by the California court's interpretation that State law permitted summary discharge in such circumstances. *Id.* at p. 6. The Court further held that the summary discharge did not violate the employee's rights under the Fifth Amendment. *Id.* at pp. 6–7. Dissenting from this latter holding, Justice Brennan conceded that, "Doubtless a probationary employee can constitutionally be discharged without specification of reasons at all; and this Court has not held that it would offend the Due Process Clause, without more, for a State to put its entire civil service on such a basis . . . ." *Id.* at p. 16.

In the case before us the Legislature chose to allow a school committee three years to evaluate the performance of a teacher before the teacher would be deemed to have proved his competence and would thenceforth be subject to dismissal only for the causes set forth in G. L. c. 71, § 42. "Manifestly one of the most important duties involved in the management of a school system is the choosing and keeping of proper and competent teachers. The success of a school system depends largely on the character and ability of the teachers. Unless a school committee has authority to employ and discharge teachers it would be difficult to perform properly its duty of managing a school system. The statutory power of a school committee to discharge teachers has always been freely construed." *Davis* v. *School Comm. of Somerville,* 307 Mass. 354, 362. "The Legislature, moved by obvious and strong reasons, has vested the school committee with the absolute and unconditional power to agree

with teachers upon their salaries to the end that high standards may be secured and maintained in the education of the youth of the Commonwealth." *Leonard* v. *School Comm. of Springfield,* 241 Mass. 325, 329–330. Moved by those same strong reasons, the Legislature chose also "to provide some degree of protection for the tenure of teachers who have served a probationary term of three consecutive school years and who are continued in employment thereafter." *Frye* v. *School Comm. of Leicester,* 300 Mass. 537, 538–539. In doing so it has abridged no constitutional right of a probationary teacher.

4. The plaintiffs contend that certain of the findings of the judge were unsupported by or contrary to the evidence. We agree that the evidence does not support the judge's finding that the plaintiffs learned on the evening of September 4, 1968, of a plan to lead the children to the Shaw House the next day. The evidence shows, rather, that the plaintiffs attended a meeting on September 4 at which were present some or all of the demonstrators who had entered the Gibson School that day; that plans were made at the meeting for the demonstrators to return to the Gibson School the next day; that on the morning of September 5, when school officials were standing at the front door, three of the plaintiffs entered the school yard by means of the fire escape; that before the children were led away at least one of the plaintiffs had frequent contact with the demonstrators standing near the front door; and that another of the plaintiffs actively participated in assembling the children and leading them to the Shaw House. The discrepancy between the findings and the evidence is harmless. Whether the plaintiffs knew of the plan the day before it was executed, whether they learned of it only minutes before, or indeed whether they joined in the plan on the spur of the moment is immaterial to the issue whether, as probationary teachers, they were entitled to a hearing.

5. The plaintiffs contend that the judge erred in excluding testimony of an expert witness. The offered testimony was to the effect that suspension and dismissal of probationary

teachers without a hearing "would have no legitimate educational purpose." As we construe the testimony, it amounts to a conclusion on the ultimate issue whether G. L. c. 71, §§ 42 and 42D, are patently arbitrary. That was a question for the judge. See *Paddock* v. *Brookline*, 347 Mass. 230, 232; *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health*, 348 Mass. 414.

6. We conclude that the plaintiffs were lawfully suspended and their contracts lawfully terminated by the school committee of Boston, and that the plaintiffs are not entitled to reinstatement as teachers.

*Appeals dismissed.*