**Phyllis VANDERZANDEN, Plaintiff,**

**v.**

**LOWELL SCHOOL DISTRICT NO. 71, a municipal corporation, et al., Defendants.**

**Civ. No. 72-377.**

United States District Court, D. Oregon.

Sept. 5, 1973.

Leslie M. Swanson, Jr., of Johnson, Johnson & Harrang, Eugene, Or., for plaintiff.

Larry O. Gildea, of Gildea, Speer & McGavic, P. C., Eugene, Or., for defendants.

SKOPIL, Judge:

## I

## JURISDICTION

Plaintiff is an elementary school teacher in the Lowell School District. Defendants are the school district, the individual members of the school board, and the superintendent of the school district. She alleges that defendants violated certain of her constitutional rights, and she demands damages for those violations and injunctive relief against any further violations. Her claims are asserted under the Civil Rights Act of 1971, 42 U.S.C. § 1983, and the First, Ninth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is based upon 28 U.S.C. § 1343.

## II

## FACTS

By an annual contract, plaintiff was employed as an elementary school teacher with the defendant district. The defendant Lowell School District No. 71 is a non-tenure [1] district. Individual defendants Ray Campbell, Robert C. Motsinger, Larry Walsh, Maylene Rice, and Ralph E. McCurdy, were members of the board of directors of the school district.

The defendant Richard L. Harmon was the superintendent of the school district.

Plaintiff was a member of the Lowell Education Association, the Oregon Education Association, and the National Education Association. In her first year of teaching, plaintiff was elected secretary of the Lowell Education Association and was elected president in her second year. She served on a three-teacher consultation committee which conferred with the school board on teachers' salaries and other financial matters. From time to time she appeared before the board on behalf of district employees on grievances. She also has suggested curriculum changes which were never adopted by the school administration.

After her second year, plaintiff became outwardly critical of the administration. As president of the Lowell Education Association, she and Jerald Smith, the local representative of the Oregon Education Association, requested the Professional Rights and Responsibility Commission of the Oregon Education Association to investigate the district. The Oregon Education Association investigation in 1971 looked into the conflict among the school board members, administrators and teachers. It also examined the poor teacher morale, the communication breakdown within the school structure, and patron confusion about the proper procedure for presentation of specific problems.

In the fall of 1971, a small group of district residents met. They decided to prepare a "Fact Sheet" and "Questionnaire" to be circulated to district residents. Paul Nelson, an Oregon Education employee, undertook the drafting of the papers. Plaintiff did not attend the meeting. However, prior to the final preparation, Paul Nelson, at the suggestion of the group of residents, consulted with the plaintiff about the contents of the two documents. The group asked plaintiff to obtain a post office box in

[1]. The Oregon legislature has now abolished the distinction between tenure and non-tenure districts. Enrolled House Bill 2132, approved by Governor and filed in the office of the Secretary of State, July 20, 1973.

Springfield to which responses could be mailed. This was done by plaintiff's husband.

The "Fact Sheet" compared various school costs with other school districts on a cost-per-pupil basis. The "Questionnaire" posed questions about the school district operation and administrative personnel. After the sheets were mimeographed, they were delivered to plaintiff's home and she mailed them. They were circulated over the name of "Lowell Taxpayers Committee." Plaintiff picked up the responses, read each response, and then delivered them to Mr. and Mrs. George Crampton, members of the original group.

The mailings caused an immediate reaction in the community. The school administration received many inquiries about the subject matter of the Fact Sheet and Questionnaire. Some callers suggested that teachers were involved, and insisted that the administration discover their identity, as well as the identity of the other members of the Lowell Taxpayers Committee.

When it was discovered that teachers were involved, Lowell elementary teachers also became concerned about the identity of the responsible people. The teachers hesitated to talk about the incident for fear of being implicated. Several teachers discussed the matter with the school principal, saying that the information in the mailings constituted a criticism of their professionalism. The resulting tension and hostility among the elementary staff impaired the teachers' classroom performance. Students also became curious about the source of the documents and the reason for their circulation.

Curtis Benefiel, the elementary school principal, asked plaintiff about her involvement in the incident. Plaintiff replied that she was not a member of the Lowell Taxpayers Committee and refused to discuss the matter further. The following day, Benefiel again asked plaintiff about her involvement, and she repeated that she was not a member of the Committee. Benefiel showed plaintiff a copy of the post office box application bearing her husband's name. He again inquired as to her participation in the preparation and circulation of the mailings. She refused to reply, saying the principal would have to talk to her husband about the post office box.

Plaintiff's refusal to discuss the matter created suspicion in Benefiel's mind as to her involvement. Because of the suspicion and the uneasiness among the elementary staff, Benefiel informed the school administration he would consider resigning unless the matter was resolved.

On December 1, 1971, the school board, in its effort to investigate the incident, requested plaintiff's presence at an executive session of the board. No official action could or would be taken. Plaintiff appeared with her attorney. The board chairman, Ray Campbell, informed plaintiff of the board's desire to have her respond to questions without interruption from her attorney. This condition was unacceptable to her. She and her attorney left the meeting.

On December 2, 1971, Benefiel gave plaintiff a letter notifying her of her indefinite suspension, with pay.

On December 15, 1971, plaintiff was notified by letter of a special board meeting to be held on December 21, 1971, when the board would consider Superintendent Harmon's recommendation to terminate plaintiff. The written notice stated the reasons for termination as follows:

"(1) Your direct involvement in the writing and distribution of the circular and questionnaire mailed to the patrons of the Lowell School District in November, 1971, under the anonymity of the Lowell Taxpayers' Committee, contained deliberate misleading comparisons of school costs and the false innuendos about the administration of this school district.

"(2) You were intentionally misleading and not truthful in discussing with your principal your part in the preparation and distribution of the Lowell Taxpayers' Committee documents.

"(3) You refused, on December 6, 1971, to explain or discuss your participation in the preparation or distribution of the Lowell Taxpayers' Committee documents with the school board. It was explained to you and your attorney at that time that your refusal to answer simple questions from the board in a forthright and candid manner and without interference from your attorney would be considered an act of insubordination. You nevertheless refused because, according to your attorney, the superintendent had a conflict of interest because of a contemplated libel action against those who wrote or distributed the Lowell Taxpayers' Committee documents.

"(4) You have made continuous efforts, for the past several months, to undermine and discredit this administration, the school board, and the Lowell school system."

The plaintiff, with counsel, appeared at the special meeting. She, through her attorney, demanded a due process hearing. At the conclusion of the meeting, the board terminated plaintiff as a teacher. On January 10, 1972, the board voted to pay plaintiff the remaining amount due on her 1971–72 employment contract.

The Oregon Education Association, because its local representative had aided in the preparation and circulation of the mailings, investigated the incident. An Oregon Education Association state representative, John Danielson, interviewed plaintiff, other teachers, and school administration personnel. He suggested to plaintiff that she might be reinstated as a teacher at Lowell, but she responded that she was not interested. She wanted Superintendent Harmon's job.[2]

In the spring of 1972, plaintiff applied to the Springfield, Eugene, and Bethel school districts for teaching positions but was not accepted. There was conflicting expert testimony about the effect of plaintiff's termination.

### III

### LIABILITY OF THE SCHOOL DISTRICT

I have previously dismissed plaintiff's request for monetary relief against the school district.[3] I now conclude that plaintiff's request for equitable relief against the school district must also be dismissed. The school district is not a "person" under § 1983 for purposes of either equitable relief or damages. City of Kenosha v. Bruno, 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L. Ed.2d 109, 116 (1973). Plaintiff is not entitled to any relief against the school district.

### IV

### LIABILITY OF INDIVIDUAL SCHOOL BOARD MEMBERS

A. *First Amendment Rights.*

First Amendment freedoms are available to both teachers and students, and neither teachers nor students "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Community School Dist., 393 U.S. 503, 506, 89 S. Ct. 733, 736, 21 L.Ed.2d 731 (1969). The right is not without limitation. School officials still have the responsibility for the orderly administration of

---

2. At the end of the 1971–72 school year, the school board chairman requested and received Harmon's resignation, although he had two years remaining on the contract.

3. Order of February 16, 1973, Civ.No.72–377.

their schools, which necessarily implies the power to prescribe and control teacher and student conduct. When a conflict arises between asserted First Amendment rights and good faith actions by school officials, freedom of speech may not be abridged without "facts which might reasonably [lead] . . . school authorities to forecast substantial disruption of or material interference with school activities . . . ." *Id.* at 514, 89 S.Ct. at 740. Thus, courts must balance First Amendment rights against the state's interest in preserving and protecting its educational process. Karp v. Becken, 477 F.2d 171, 174 (1973); *see also* Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

■ The members of the school board are elected by school district voters and receive no compensation for their service. Plaintiff contends that the school board members, while acting in their official capacities, have unqualified monetary liability under § 1983. I cannot agree. The school board members possess qualified immunity from liability for performance of official duties in good faith, although that immunity may not bar recovery in the appropriate factual situation. Hayes v. Cape Henlopen School District, 341 F.Supp. 823, 829 (D.Del.1972). Absent any contrary evidence, if plaintiff's right to freedom of speech was violated, it would justify a monetary award against the individual school board members. There is, however, a substantial amount of contrary evidence in this case, which must be weighed against plaintiff's freedom of speech claim.

The school board had before it the following facts:

1) Plaintiff participated in the distribution of material to school district patrons which was patently misleading.

2) Plaintiff failed to disclose, when asked by her principal, information about her involvement in the distribution of the Fact Sheet and Questionnaire.

3) Plaintiff had previously criticized the school district administration for its policies, curriculum, and method of operation. The criticism led to formation of antagonistic factions among the teachers and to an undermining of the administration.

4) Plaintiff's activities caused the elementary school principal to feel he could no longer control the situation. He, in effect, said that either he or plaintiff would have to go.

5) Circulation of the Fact Sheet and Questionnaire caused distress among the school district's patrons. They demanded action by school officials. These inquiries detracted from the officials' normal duties.

6) Students took classroom time to ask about the incident.

The school board was faced with a disruptive situation. In the opinion of the school board, this hostile atmosphere materially interfered with normal school activities. They were aware of the patrons' insistence that the conflicts be resolved and the school return to the business of educating the district's children. They determined that the best way to eliminate the problem was to terminate the plaintiff.

■ The action of the board did infringe upon plaintiff's freedom of expression. In weighing the conflict between this constitutional violation and the reasonableness of the determination of material interference with school activities, I must resist any "Monday morning quarterbacking," and look at the situation as the school board viewed it. Karp v. Becken, *supra,* 477 F.2d at 176. The board's evaluation of the situation was reasonable. There was a material interference with normal school activities. The board's sanction of termination may appear harsh, but it was the only real solution. Lowell was a small, close community school district. The flexibility afforded a large school district was not available. There was no other school in the district to which plaintiff could be transferred. This dis-

tinction is recognized. Bock v. Bend School District No. 1, 252 Or. 53, 448 P. 2d 521 (1968).

■ The individual school board members acted in good faith in terminating plaintiff. The school board members are not liable for abridgment of plaintiff's First Amendment rights of freedom of speech and association.

### B. *Fourteenth Amendment Rights.*

Plaintiff asserts that she was deprived of her constitutional right of a due process hearing.

Plaintiff was a non-tenured teacher being employed under an annual contract with the defendant school district. Being a non-tenured teacher, the statutes of the State of Oregon do not provide the procedural requirements to be followed for dismissal.[4]

■ I am first concerned whether the plaintiff was entitled to any hearing. A non-tenured teacher does not, in every case, have a right to a hearing. Several criteria are to be considered in determining whether a hearing is required. Minimal requirements would dictate that if any of the following factors exist, a teacher is entitled to a hearing:

1) If the teacher has tenure, she or he has a property interest in continued employment which cannot be taken away without a prior hearing.

2) If the teacher has a contract for a period of years, or even one year, and faces termination in the middle of the contract, he or she is entitled to a hearing before termination.

3) If the teacher has a "clearly implied promise to continued employment," then the teacher is entitled to a due process hearing before being denied renewal.

4) If the teacher had an expectancy of re-employment, he or she is entitled to a hearing before that re-employment is denied.

5) If the teacher is denied renewal for a reason which would damage his or her standing or association within the community, a hearing is required.

6) If the action of the school administration imposes a stigma or other disability foreclosing the teacher's freedom to take advantage of other teaching opportunities, a hearing is required. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sinderman, 408 U.S. 593, 92 S. Ct. 2694, 33 L.Ed.2d 570 (1972); Hayes v. Cape Henlopen School Dist., *supra.*

Several of these factors are present in this case. The plaintiff was entitled to a due process hearing.

I am now confronted with the hearing afforded the plaintiff before the school board. Does it meet the minimal requirements of a due process hearing? The plaintiff contends that it does not. She insists that she was entitled to:

1) An opportunity to question the individual school board members concerning any potential bias they might have in rendering a decision.

2) The establishment of a *prima facie* case by the administration through the presentation of testimony and other evidence.

3) The right of confrontation and cross-examination of any witnesses called by the administration.

4) The opportunity to call witnesses in her behalf.

5) The right of counsel to argue prior to board action.

■ Due process is an evasive term. It is not the same in each situation. It is different in a judicial trial than in an administrative hearing. It is dependent upon the right involved, the body before whom the hearing is held, and the type

4. The Fair Dismissal Law, ORS 342.805 to 342.955, provides the procedure for dismissal of a permanent teacher. The Fair Dismissal Law applies to school districts having a specified average daily attendance. There is no provision for teacher job security in the smaller school districts, those having an average daily pupil attendance of less than 800.

of hearing employed. Ordinarily, a due process hearing would include:

1) Written notice of the time of hearing.

2) A statement of the reason for dismissal.

3) An opportunity to be present and present witnesses and documents.

4) The right of confrontation and cross-examination, without good cause shown for non-confrontation.

5) A neutral and detached hearing body.

6) A written statement by the fact finder as to the evidence relied on and the reasons for dismissal.

However, these elements of due process are not essential in every type of hearing. In Board of Regents v. Roth, *supra*, Justice Douglas in his dissenting opinion quoted with approval the summary procedure outlined by the District Court and approved by the Circuit Court of Appeals. In Roth v. Board of Regents, 310 F.Supp. 972 (1970), rev'd, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the lower court declared that:

> ". . . minimal procedural due process includes a statement of the reasons why the university intends not to retain the professor, notice of a hearing at which he may respond to the stated reasons, and a hearing if the professor appears at the appointed time and place. At such a hearing the professor must have a reasonable opportunity to submit evidence relevant to the stated reasons. The burden of going forward and the burden of proof rests with the professor. Only if he makes a reasonable showing that the stated reasons are wholly inappropriate as a basis for decision or that they are wholly without basis in fact would the university administration become obliged to show that the stated

reasons are not inappropriate or that they have a basis in fact." 310 F. Supp. at 979–980.

I adopt these standards in this case.

▪ The certified letter of December 15, 1971, notified plaintiff of the reasons for the board's consideration of her termination and notified her of the appointed time and place at which the board would consider the superintendent's recommendations for her dismissal. The plaintiff, with her counsel, was present at the meeting. She was afforded an opportunity and did present evidence and exhibits in opposition to the reasons for her termination. Plaintiff asserts that she was prevented from presenting her evidence in a question and answer form and was limited to a narrative statement. In determining due process requirements in an administrative hearing, I am not concerned about the form in which the evidence is received but the opportunity to present it. This opportunity was afforded to plaintiff.

▪ Plaintiff insists that the school administration had the burden of going forward to establish the reasons for her dismissal. I disagree. In the absence of plaintiff making a reasonable showing that the reasons for her dismissal were inappropriate as a basis for the decision to be made by the board, or that they were wholly without basis in fact, the school administration had no obligation to go forward. The burden of going forward was upon the plaintiff. She failed to sustain the burden of proof required of her.

Plaintiff was afforded a due process hearing.[5]

## V

### LIABILITY OF SCHOOL DISTRICT SUPERINTENDENT

Plaintiff complains that by reason of her dismissal, the superintendent of the

5. By action of the 1973 Oregon State Legislature, the Fair Dismissal Law now applies to all school districts. Enrolled House Bill 2132, approved by Governor and filed in the office of the Secretary of State, July 30, 1973.

school district, defendant Richard L. Harmon, deprived her of guaranteed rights in violation of 42 U.S.C. § 1983.

 There are two essential elements for a cause of action under § 1983:

1) The conduct complained of must have been done by some person acting under color of state and local law; and

2) Such conduct must have deprived the plaintiff of rights, privileges or immunities secured to her by the Constitution and laws of the United States. Curry v. Lundy, 314 F.Supp. 344 (E.D. Pa.1970); Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963).

Liability under § 1983 will lie where it is shown that the official charged directed or personally participated in the deprivation of plaintiff's rights. Bennett v. Gravelle, 323 F.Supp. 203 (D.Md.1971), cert. dismissed, 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972). The school superintendent's participation was limited to the recommendation made to the school board. The power to hire lies with the school board under the provisions of ORS 342.-505:

"  .  .  the district school board, at a general or special meeting called for that purpose, may hire teachers and shall record such action in the minutes .  .  .  ."

The express language of the Oregon statute vests with the school board the power to hire, fire or renew a teacher's contract. The power to remove personnel is necessarily implied therefrom. Owens v. School District No. 8R of Umatilla County, 3 Or.App. 294, 473 P.2d 678 (1970).

It is apparent that the superintendent had no statutory power or authority to either employ or to dismiss plaintiff. The plaintiff was dismissed by action of the school board. They alone had the statutory authority. Superintendent Harmon's recommendation to the school board did not deprive the plaintiff of any right, privilege or immunity secured to her by the Constitution and laws of the United States.

Plaintiff is not entitled to any relief against the defendant Richard L. Harmon, Superintendent of Lowell School District No. 71.

### VI

### NINTH AMENDMENT RIGHTS

Plaintiff has asserted a violation of her Ninth Amendment rights. This contention was not urged at trial nor argued in plaintiff's written argument. Ninth Amendment rights are not an issue in this case.

### VII

### CONCLUSION

The plaintiff's request for money damages and for injunctive relief is denied.

The foregoing shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).