**Joseph C. WOOD, Plaintiff,**

v.

**Theodore J. GOODMAN et al.,
Defendants.**

**Civ. A. No. 70–729–J.**

United States District Court,
D. Massachusetts.

Sept. 17, 1974.

———◆———

Louis W. Maples, Boston, Mass., for plaintiff.

Joseph H. Malloy, Canton, Mass., for defendants.

## OPINION

JULIAN, Senior District Judge.

This action is brought pursuant to 42 U.S.C. § 1983 (1970) to redress alleged violation of rights secured by the Constitution of the United States. Plaintiff seeks compensatory and punitive damages and a declaration that M.G.L. c. 71, § 42D, particularly the second paragraph thereof,[1] and actions of the defendants

---

1. At all times material hereto M.G.L.A. c. 71, § 42D, provided:

"The school committee may suspend any teacher, but no teacher shall be suspended for more than ten days and no superintend-

ent, other than a union superintendent and the superintendent of schools in the city of Boston, shall be suspended, unless by a two thirds vote of the whole committee. In every such town a teacher or superintendent

pursuant thereto are unconstitutional. Plaintiff waived his demand for injunctive relief at the pre-trial conference on April 1, 1974. Jury trial having been waived, this case was tried by the Court.

*Findings of Fact*

1. The plaintiff, Joseph C. Wood, is a tenured teacher in the Canton, Massachusetts public school system. The academic year 1973–1974 was the twelfth year of plaintiff's employment in that system. During the academic year 1969–1970 plaintiff taught a course entitled, "General Music," in the Fine Arts Department of the Canton Junior High School.

2. The defendants, Margaret R. Brayton, Gaetano DiGirolamo, Theodore J. Goodman, William H. Kelleher, Thomas J. Lane, Michael G. Loughran, Leonard P. O'Brien, Ronald Pozzo and Mary Ruth Ruane, constituted the School Committee of Canton at all times material to this case.

3. The defendant William H. Galvin is, and was during all times material hereto, Superintendent of Schools of the Town of Canton; in this capacity he was and is the chief administrative officer of the public schools.

4. John O'Connell was Assistant Superintendent of Schools in Canton. Eugene DeFelice was Principal, and Thomas Kannally Assistant Principal, of the Junior High School. Plaintiff's immediate supervisor or superior in the Fine Arts Department was John J. Judge, who was the department head in the school system. Judge, Kannally, DeFelice, O'Connell and the defendant Galvin constituted plaintiff's superiors during the academic year 1969–1970.

5. The School Committee of Canton published a booklet of rules and regulations for Canton public schools in 1963. Although the School Committee has not abrogated the rules and regulations, the booklet is no longer actively used in Canton. Plaintiff had read the booklet several times. Although each party produced a witness who purportedly possesses a copy of the booklet, no copy was introduced in evidence.

6. Prior to the academic year 1970–1971, the plaintiff had used some language in the classroom that offended some of his pupils. Complaints concerning plaintiff's classroom language were received by plaintiff's superiors from the pupils' parents. The plaintiff's superiors repeatedly informed plaintiff of the complaints and admonished him.[2]

7. Prior to the academic year 1970–1971, the plaintiff had difficulty eliciting the standard of deportment he de-

employed at discretion under section forty-one shall not be suspended, under the provision of this paragraph, except for unbecoming conduct or other good cause, nor unless at least seven days exclusive of customary vacation periods, prior to the meeting at which the vote is to be taken, he shall have been notified of such intended vote; nor unless, if he so requests, he shall have been furnished by the committee with a written charge or charges of the cause or causes for which the suspension is proposed; nor unless, if he so requests, he has been given a hearing before the school committee which may be either public or private at the discretion of the school committee and at which he may be represented by counsel, present evidence and call witnesses to testify in his behalf and to examine them and to cross-examine other witnesses; nor unless the charge or charges shall have been substantiated; nor unless, in the case of a teacher, the superintendent shall have given the committee his recommendations thereon. No teacher or superintendent shall be suspended for a period exceeding one month, nor shall such teacher or superintendent receive compensation for any period of lawful suspension. No teacher or superintendent shall be interrogated prior to any notice given to him relative to a hearing on suspension unless he is notified of his right to be represented by counsel during any such investigation.

"The school committee, a superintendent or any other school official designated for the purpose, by the superintendent, may, notwithstanding any provision of this section to the contrary, suspend for a period of not more than seven days a teacher for unbecoming conduct or for any other cause which such committee, superintendent or official deems adequate."

2. Plaintiff does not contend he was suspended as a result of his engaging in any constitutionally protected activity or his exercise of any constitutionally protected right.

sired from the pupils he instructed. In order to establish or restore order, plaintiff sometimes sent offenders to the office of the principal or administered corporal punishment.

8. In March 1966 the plaintiff tore a pupil's shirt. In April of that year he struck another student.

9. Prior to February 9, 1970, plaintiff repeatedly received instructions from his superiors not to use corporal punishment on students. These were reasonable instructions. Some of the instructions were included in announcements orally made at annual meetings of teachers, including plaintiff, and others were communicated individually to plaintiff as a result of specific instances in which he had used corporal punishment.[3]

10. On February 9, 1970, while plaintiff was writing on a blackboard, with his back to his class, a pupil began to disrupt the class. Plaintiff saw the boy lying with his back on the seat of his chair, with his hair dangling to the floor. The boy was feigning a seizure. The boy's actions captured the attention of his classmates and - disrupted the class. Despite the plaintiff's entreatments to desist, the boy resumed his feigned seizure each time plaintiff turned his back to continue writing on the blackboard.

11. Plaintiff, removing his belt and doubling it over his hand in such a manner that the buckle was in the palm of his hand, approached the boy and told him to stand. Plaintiff intended to strike the boy with the belt. Plaintiff swung the belt at him twice. The first time the belt missed the boy and struck a chair. The second time it struck the boy.

12. At the time of the incident the plaintiff weighed approximately 197 pounds. The boy was a seventh-grade pupil, about eleven years of age, of

slight build, and weighed approximately 102 or 105 pounds.

13. The boy's father complained about the incident to the principal, DeFelice, and a meeting was held in DeFelice's office on February 10, 1970. DeFelice, Kannally, plaintiff, the boy and the boy's father attended. The meeting centered on the incident of the preceding day. At the meeting the plaintiff admitted striking the boy and apologized. The boy displayed a welt produced by the belt striking his thigh. The bruise was reddish, approximately two inches in length and two inches in width, and was located on the outside of the boy's thigh.

14. The corporal punishment inflicted by the plaintiff on the pupil was in direct violation of the instructions given him by his superiors. Even if it be assumed, however, that, in the circumstance, the plaintiff, despite the instructions, had the right to inflict corporal punishment on the boy, the Court further finds that the use of the belt to inflict the punishment was improper and the force used excessive.

15. After the boy and his father left, DeFelice, Kannally and plaintiff remained in DeFelice's office. DeFelice informed the plaintiff that the February 9, 1970 incident was serious and that he would recommend to Galvin and O'Connell that further action be taken. DeFelice did in fact recommend further action.

16. · DeFelice, Galvin and O'Connell met and discussed the February 9, 1970 incident. Galvin and O'Connell are responsible for compiling the agenda for School Committee meetings; as a result of the discussion with DeFelice, Galvin and O'Connell scheduled a discussion of the propriety of the plaintiff's actions on the agenda of the School Committee meeting for March 19, 1970. At this

---

3. Although not in effect in 1970, it is interesting to note that M.G.L.A. c. 71, § 37G, enacted in 1972, provides:

"The power of the school committee or of any teacher or other employee or agent of the school committee to maintain discipline upon school property shall not include the right to inflict corporal punishment upon any pupil."

meeting the School Committee, after some discussion, tabled the matter.

17. Plaintiff testified that *during* March 1970 he met with some of his superiors, including Galvin and O'Connell, and was asked to resign. He further testified that they warned him of the damage which could be done to plaintiff's professional standing if he did not resign. Plaintiff further testified that he refused to resign. DeFelice's affidavit corroborates plaintiff's testimony that a meeting occurred and fixes the date thereof as March 20, 1970; it also corroborates plaintiff's testimony that he was asked to resign and refused to do so. (Plf. Exh. 4, ¶¶ 5, 6.) At the trial, however, DeFelice testified that no such meeting occurred on March 20 or on any other date. DeFelice's testimony was corroborated by O'Connell. It is not necessary to decide whether, and on what date, the meeting occurred. However, the Court finds, as fact, that plaintiff was sometime between February 9, 1970 and the beginning of the School Committee meeting on May 7, 1970 asked by at least one of his superiors to resign and that plaintiff refused. The Court also finds that no threats were made or warnings given by anyone *concerning the damage which could be done* to plaintiff's professional standing if he did not resign.

18. Plaintiff retained counsel to represent him in proceedings arising from the February 9, 1970 incident. Plaintiff informed the attorney that there was a possibility that the incident might result in plaintiff's suspension from the school system. Plaintiff's counsel contacted the Chairman of the School Committee, identified himself as plaintiff's attorney, and asked to meet with the Chairman at his convenience. The attorney and the Chairman met and discussed the February 9, 1970 incident and plaintiff's fear that he would be suspended because of that and other incidents. As a result of the discussion the attorney expected that he and his client would be invited to attend a School Committee meeting.

19. On April 2, 1970 the School Committee met and decided to request plaintiff and his attorney to attend its April 16, 1970 meeting during executive session.

20. On April 13, 1970 Galvin wrote to the attorney the plaintiff had retained. The letter informed the attorney that the School Committee would meet with him and his client in executive session on April 16, 1970 at a specified time and place.

21. The School Committee did not meet with plaintiff and his attorney on April 16, 1970. The meeting was rescheduled to occur on May 7, 1970, and plaintiff's attorney was notified of the change in date.

22. Prior to the May 7, 1970 meeting, plaintiff and his attorney had actual knowledge that the School Committee would consider disciplinary action against plaintiff due to the February 9, 1970 incident.

23. The School Committee met in executive session with plaintiff and his attorney on May 7, 1970. DeFelice, Kannally, Galvin and O'Connell also were present.

24. At the May 7, 1970 meeting DeFelice reported that the plaintiff had struck a pupil on February 9, 1970. DeFelice also presented a history of plaintiff's classroom misconduct. He cited previous instances in which the plaintiff had struck pupils and stated that the plaintiff previously had been admonished concerning his use of corporal punishment and his use of offensive language in class. DeFelice recommended that plaintiff be suspended, dismissed or transferred.

25. The plaintiff, on advice of counsel, did not speak at the meeting. Counsel addressed the Committee; he stated his client would not resign, that his client believed that he was not the only Canton teacher who used corporal punishment, and that written guidelines should be developed regarding corporal punishment. Counsel's address caused much discussion among the members of

the Committee and counsel concerning the existence or absence of such guidelines.

26. There is no evidence tending to show that plaintiff or his attorney was not given the opportunity to present witnesses or other evidence in behalf of the plaintiff or of cross-examining De-Felice during the May 7, 1970 meeting.

27. Plaintiff and his attorney left the May 7, 1970 meeting before adjournment.

28. After plaintiff and his attorney left the meeting, the School Committee voted to table plaintiff's case until the next meeting in executive session, in order that three questions could be researched. The questions, which relate to possible discipline of the plaintiff, were:

"Can his salary be frozen?

Can he be suspended?

Can he be dismissed?"

(Plf. Exh. 2, Minutes of Meeting of Executive Session of May 7, 1970.) The School Committee meeting was then adjourned; the meeting took fifty-five minutes and no business other than plaintiff's case was discussed.

29. O'Connell, the Assistant Superintendent, who is not an attorney, was instructed by the School Committee through its Chairman, to inquire into the law concerning the three above-quoted questions. O'Connell spoke with an attorney for the Department of Education of the Commonwealth. During the conversation the attorney referred O'Connell to M.G.L. c. 71, § 42D, of which O'Connell had a copy. The attorney orally outlined the procedure under M.G.L. c. 71, §§ 42 and 42D, concerning discipline of teachers and advised O'Connell to contact the Town Counsel for Canton, inform him of the situation and get his advice.

30. The Canton School Committee again met in executive session on May 21, 1970. At the meeting:

"The question of dismissal and/or suspension and/or withholding salary from Mr. Joseph Wood, a teacher at Canton Junior High School was discussed at length. Mr. John A. O'Connell, Assistant Superintendent of Schools, reported to the Committee the results of his discussions with the legal department of the Massachusetts Department of Education. Mr. O'Connell listed the following concerning dismissal:

a. The Town Counsel must be informed and brought into the case.

b. Mr. Wood must be notified at least thirty days prior to the day the Committee meets to vote.

c. It must be a two-thirds vote.

d. There must be a recommendation by the Superintendent.

e. Mr. Joseph Wood may request a written charge for the cause of intended dismissal and a hearing with counsel.

f. Charges must be substantiated.

g. Mr. Wood could appeal to the Superior Court within thirty days.

All of these are in accordance with Chapter 71, Section 42 and the Massachusetts General Laws.

Mr. O'Connell reported that the same procedure and the exact same steps must be taken for a suspension longer than ten (10) days. He also reported that the Committee could not withhold a salary increase because of the fact that Mr. Wood is at maximum salary (a salary step increment could be withheld in any other case.) Mr. O'Connell recommended that the School Committee follow the procedure under Chapter 71, Section 42D which permits a School Committee to suspend a teacher without pay for the period of not more than ten (10) days for unbecoming conduct."

(Plf. Exh. 2, Minutes of Meeting of Executive Session of May 21, 1970, Item 3.)

31. At the May 21, 1970 meeting the School Committee voted

"to notify Mr. Joseph Wood, by registered mail, that he is suspended with-

out salary for ten (10) days effective starting Wednesday, May 27, 1970." (Plf. Exh. 2, Minutes of Meeting of Executive Session of May 21, 1970, Item 3.)

32. The defendant Kelleher did not attend the School Committee meeting of May 21, 1970 nor did he participate in the vote on that day to suspend plaintiff.

33. O'Connell first contacted the Town Counsel for Canton after the School Committee meeting of May 21, 1970 had concluded.

34. On May 22, 1970 Galvin signed and mailed a letter to plaintiff informing plaintiff that the School Committee had voted (8–0) to suspend him for ten school days for conduct unbecoming a teacher under M.G.L. c. 71, § 42D. Plaintiff received the letter.

35. After he was notified of the suspension, plaintiff filed a bill in equity in the Superior Court in Norfolk County, Massachusetts. On June 8, 1970 a consent decree was entered in that suit; the decree provided "that the vote of the Canton School Committee of May 21, 1970 is a nullity and not binding on the petitioner." (Plf. Exh. 1B.) The sole reason for the annulment of the vote was that the vote purported to suspend plaintiff for ten days, which was three beyond the number permitted under M. G.L. c. 71, § 42D.

36. Prior to the June 4, 1970 meeting of the School Committee, its members were informed of the pending state court suit. The members also were informed by Galvin that M.G.L. c. 71, 42D, had been amended and that the School Committee should have voted a seven-, not ten-, day suspension. At the June 4, 1970 meeting Galvin informed the School Committee that he had spoken with Town Counsel, that corrective action was necessary, since the period of suspension should be seven, not ten, days and recommended that plaintiff be suspended for seven days without salary.

37. The Committee decided to send a corrected directive to plaintiff to notify him that he was suspended for seven days. The Committee, therefore, voted "8-yes, 0-no, to suspend Mr. Joseph C. Wood, Jr. for conduct unbecoming a teacher, for a period of seven days . . . ." (Plf. Exh. 2, Minutes of Meeting of Executive Session of June 4, 1970, Item 1.) Galvin sent, and plaintiff received, notification of the suspension.

38. The vote of June 4, 1970 to suspend plaintiff was based solely on the facts delineated at the May 7, 1970 School Committee meeting.

39. On all the evidence before it, the Court finds that all the defendants acted at all times in good faith.

40. Contrary to plaintiff's allegation, the plaintiff was in fact furnished sufficient materials and teaching aids to enable him properly to instruct his classes.

*Conclusions of Law*

1. This Court has jurisdiction. 28 U.S.C. § 1343(3).

2. Defendant Galvin did not deprive plaintiff of any interest protected by the Fourteenth Amendment. Vanderzanden v. Lowell School Dist. No. 71, 369 F.Supp. 67, 74–75 (D.Or., 1973).

3. The School Committee members and the Superintendent, who necessarily exercise discretion in performing their official duties, are not liable for damages for performance of official duties which are undertaken in good faith. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Vanderzanden v. Lowell School Dist. No. 71, 369 F.Supp. 67, 72 (D.Or., 1973); Hayes v. Cape Henlopen School Dist., 341 F.Supp. 823, 829 (D.Del., 1972); see Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *contra,* Lucia v. Duggan, 303 F.Supp. 112 (D.Mass., 1969).

4. The suspension of plaintiff which was voted by the defendant members of the School Committee of Canton on June 4, 1970 was action taken under color of state law. 42 U.S.C. § 1983 (1970); Lucia v. Duggan, 303 F.Supp. 112 (D.Mass., 1969).

**420**

**5.** Plaintiff's interest in pursuing his employment as a tenured teacher is an interest encompassed by the Fourteenth Amendment's protection of liberty and property. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L. Ed.2d 570 (1972); Lucia v. Duggan, 303 F. Supp. 112 (D.Mass., 1969).

**6.** The facts delineated at the School Committee meeting of May 7, 1970 (see Findings of Fact ¶¶ 24, 25, *supra*) were a sufficient basis for the Committee reasonably to decide plaintiff's conduct necessitated his suspension for conduct unbecoming a teacher. *Cf.* DeCanio v. School Committee of Boston, 358 Mass. 116, 118, 123, 260 N.E.2d 676 (1970), appeal dismissed, Fenton v. School Committee of Boston, 401 U.S. 929, 91 S.Ct. 925, 28 L.Ed.2d 209 (1971).

**7.** The term "unbecoming conduct," M.G.L. c. 71, § 42D is sufficiently definite and clear to put plaintiff on notice that the conduct he engaged in would make him subject to the administrative sanction of a temporary suspension. See DeCanio v. School Committee of Boston, 358 Mass. 116, 260 N.E.2d 676 (1970), appeal dismissed, 401 U.S. 929, 91 S.Ct. 925, 28 L.Ed.2d 209 (1971); Lucia v. Duggan, 303 F.Supp. 112 (D.Mass., 1969). *Cf.* MacKenzie v. School Committee of Ipswich, 342 Mass. 612, 174 N.E.2d 657 (1961); Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L. Ed.2d 439 (1974) (military prosecution for "conduct unbecoming an officer and a gentleman"); Secretary of Navy v. Avrech, —— U.S. ——, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974) (same).

**8.** Plaintiff had full knowledge of the charge against him and of the nature of the proposed disciplinary action; he was given due notice of the hearing; he was given a reasonable opportunity to be heard and to contest the charge; he was represented by counsel. These facts establish that the plaintiff was accorded procedural due process. See Board of Regents v. Roth, 408 U.S. 564, 570 n. 7 and 8, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972); *Id.*, at 585–587, 92 S.Ct. 2701 (Douglas, J., dissenting); Vanderzanden v. Lowell School Dist. No. 71, 369 F.Supp. 67, 73–74 (D.Or., 1973); Lucia v. Duggan, 303 F.Supp. 112, 118 (D.Mass., 1969); see also Ahern v. Board of Education of School Dist. of Grand Island, 456 F.2d 399, 403 (8th Cir., 1972). On the facts found, the Court rules that plaintiff was also accorded substantive due process. The subsequent reduction of the period of suspension from ten days to seven days in order to bring the School Committee's action into compliance with the state statute removed the only defect in the Committee's original action against the plaintiff. The consent decree entered in the Superior Court did not affect the proceedings that had taken place prior to the imposition of the ten-day suspension nor did it affect the second vote of the Committee which imposed the valid sanction of a seven-day suspension. *Cf.* Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947).

Since the procedural safeguards accorded the plaintiff in this case meet all the requirements of due process, it is unnecessary to enter a declaration, as requested by the plaintiff, concerning whether a suspension under the second paragraph of M.G.L. c. 71, § 42D, may, consistently with due process, occur without the procedural safeguards given the plaintiff in this case. But see Lucia v. Duggan, 303 F.Supp. 112 (D.Mass., 1969).

It is ordered that judgment be entered for the defendants.