Bernard Anthony YBARRA,
Plaintiff-Appellant,

v.

J. Grant BASTIAN, State Highway Engineer; Lonnie Gene Phelps, Highway Business Manager; Mark Hull, Industrial Relations Manager; Curtis Foltz, Data Processing Manager, et al., Defendants-Appellees.

No. 78–3648.

United States Court of Appeals,
Ninth Circuit.

Argued Oct. 14, 1980.

Submitted Oct. 28, 1980.

Decided Feb. 12, 1981.

Rehearing and Rehearing En Banc
Denied June 4, 1981.

Bernard Anthony Ybarra, pro se, on the briefs.

Samuel P. McMullen, Carson City, Cal., on the briefs, for defendants-appellees.

Before WALLACE and ALARCON, Circuit Judges, and von der HEYDT,* District Judge.

WALLACE, Circuit Judge:

Ybarra appeals from a district court dismissal of his action for damages, declaratory judgment and other relief pursuant to 42 U.S.C. § 1983. Ybarra contends that his suspension and dismissal from his job with the State of Nevada violated his civil rights. We affirm.

I

Ybarra was a computer programmer employed by the Nevada State Highway Department (Highway Department). On August 25, 1974, Ybarra was charged with the murder of a fellow employee. On October 11, 1974, he was released on bail. After declining to accept voluntary suspension from employment pending trial on the murder charge, Ybarra was involuntarily suspended on October 21, 1974. Ybarra sought an administrative hearing before the Nevada State Personnel Advisory Commission (Personnel Commission), and on February 13, 1975, the hearing officer ordered him reinstated to his position with back wages and benefits for the period beginning October 21, 1974, through February 20, 1975. The hearing officer concluded that the Highway Department lacked authority to dismiss an employee upon indictment by a grand jury for murder.

The Highway Department acknowledged the decision of the hearing officer, but immediately terminated Ybarra on the grounds of "[c]ausing discord among employees to the detriment of morale." Ybarra again appealed to the Personnel Commission. On March 19, 1975, the hearing officer found that Ybarra; who had never been permitted to return to work, had not engaged in any conduct causing discord among employees to the detriment of morale. Ybarra was again ordered reinstated with back pay and benefits. On March 20,

1975, however, a supervisor at the Highway Department told Ybarra not to report to work.

On April 15, 1975, Ybarra was convicted of murder in the first degree in a Nevada state court. On April 16, 1975, the Highway Department terminated Ybarra on the basis of the conviction, citing Rule XII C & D(14) of the Rules for State Personnel, under which an employee may be dismissed upon conviction of a crime involving moral turpitude. Ybarra again appealed his termination to the Personnel Commission. On July 2, 1975, the hearing officer, taking judicial notice of the murder conviction, "reviewed [his] request for appeal and [found] it to be without merit." No hearing was held.

Ybarra brought an action based upon this last termination in the district court against various Highway Department personnel pursuant to 42 U.S.C. §§ 1981–1986. The United States magistrate recommended dismissal of all claims save the section 1983 claim and requested supplemental briefing with respect to that section. Instead, Ybarra submitted an amended complaint under section 1983, together with supplemental argument. When a second motion to dismiss was filed, the magistrate recommended that the court dismiss the action with prejudice for failure to state a claim. The district judge accepted the recommendation of the magistrate and dismissed the action with prejudice.

II

Section 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Only federal rights, privileges, or immunities are protected by the section. Violations of state law alone are insufficient. *Dorsey v. NAACP*, 408 F.2d 1022, 1023 (5th Cir.), *cert. denied*, 396 U.S. 847, 90 S.Ct. 58, 24 L.Ed.2d 97 (1969). We agree with the conclusion of the magistrate that the Highway Department personnel did not

---

* Honorable James A. von der Heydt, Chief United States District Judge for the District of Alaska, sitting by designation.

violate the United States Constitution or federal law in the acts alleged: the various suspensions and dismissals of Ybarra, the refusals to reinstate him, or in any possible conspiracy incident thereto. Ybarra must look to the state law for redress of these grievances.

A more difficult issue is raised by Ybarra's procedural due process claim that the Personnel Commission declined to grant him a hearing after his final dismissal by the Highway Department, despite a statute apparently requiring such a hearing.[1] We conclude that Ybarra's due process claim must be dismissed for lack of an underlying property or liberty interest.[2]

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) (*Roth*). As to property rights, under certain circumstances one who has had a protectable property interest in future employment may find that interest extinguished. In *Beller v. Middendorf*, 632 F.2d 788 (9th Cir. 1980) (*Beller*), we considered a due process challenge to the discharge of naval personnel who admitted engaging in homosexual conduct. The then current Navy regulations required discharge of such personnel subject only to the discretion of the Secretary of the Navy for the good of the service based upon highly unique or especially valuable attributes of the individual. Under these regulations, we concluded that the performance of homosexual acts made any expectation of continued employment unreasonable, thus extinguishing the property interest and rendering any hearing unnecessary. *Id.* at 805.

An employee with a property interest in continued employment will have that interest extinguished, as in *Beller*, in those rare circumstances in which the employee is determined to have what amounts to automatic disqualification for future employment. In the present case Ybarra's conviction for the murder of a fellow employee, under a procedure more protective of his rights and requiring a higher standard of proof than an administrative hearing would provide, coupled with the long prison sentence he received, should have completely eliminated any shred of expectation he might previously have had in future employment. Although the supervisor's discretion to retain Nevada employees whose conduct constituted cause for termination may be somewhat broader than the discretion of the Secretary of the Navy in *Beller*,[3] it is not a discretion Ybarra could expect to be exercised in his favor.

Here, as in *Beller*, there was, in effect, "nothing more about which to have a hearing." *Id.* at 805–06. Federal due process does not require hearings without any possible substance.

Similarly, Ybarra's conviction for murder undermines any claim that his termination

---

1. Nevada Revised Statute § 284.390 states in part:
    1. Within 30 days after receipt of a copy of the statement provided for in NRS 284.-385, an employee who has been dismissed, demoted or suspended may, in writing, request a hearing before the hearing officer of the personnel division to determine the reasonableness of such action....
    2. The hearing officer shall grant the employee a hearing within 20 working days after receipt of the employee's written request....

2. Ybarra failed to name any members of the Personnel Commission in his amended complaint. We need not consider, however, whether this was a fatal flaw in this action prosecuted in propria persona.

3. Rule XII of the Nevada Rules for State Personnel reads, in pertinent part, as follows:
    DISMISSAL, SUSPENSION, AND REDUCTION IN GRADE OR COMPENSATION
    C. *Involuntary Demotion and Dismissal*
        When other forms of disciplinary or corrective action have proved ineffective or when the seriousness of the offense or conditions warrants the appointing authority may demote or dismiss the employee for any cause or causes listed in Section D of this Rule.
    D. *Causes for Action*

        14. Conviction of any criminal act involving moral turpitude.

without a hearing deprived him of a liberty interest. Any liberty interest incompatible with incarceration was obviously extinguished upon conviction. *See Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). There remains, however, the question of damage to Ybarra's liberty interest in his " 'good name, reputation, honor, or integrity.' " *Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707 (*quoting Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)). Ybarra may legitimately be concerned about his reputation upon his eventual release from prison, and perhaps even his reputation while incarcerated. Any damage to his reputation resulting from his dismissal from employment, however, is dwarfed by his conviction as something that "might seriously damage his standing and associations in the community" and impose "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707. *See Beller, supra,* at 805–06. Nor can we overlook the fact that, as it appears from the record, his conviction for murder was the cause of his dismissal. Thus all of the protections of a criminal trial were available to Ybarra to permit him to "refute the charge." *See Roth, supra,* 408 U.S. at 573 & n.12, 92 S.Ct. at 2707 & n.12. He has thus had "an opportunity to clear his name," *id.,* albeit not before the Personnel Commission.

We therefore conclude that Ybarra at the time of his dismissal lacked the property or liberty interests that are conditions precedent for a procedural due process claim for the denial of a post-termination hearing.

AFFIRMED.