George E. **VANELLI**, Plaintiff-Appellant/Cross-Appellee,

v.

**REYNOLDS SCHOOL DISTRICT NO. 7, et al., Defendants-Appellees/Cross-Appellants.**

Nos. 79–4172, 79–4205.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1981.

Decided Jan. 21, 1982.

---

Mitchell E. Roth, Washington, D. C., argued, for Vanelli; R. Lawrence Dessem, Washington, D. C., on brief.

W. A. Masters, Jones, Lang, Kelin, Wolf & Smith, Portland, Or., for Reynolds.

Before CHOY, KENNEDY and REINHARDT, Circuit Judges.

KENNEDY, Circuit Judge:

In this case we examine again the procedural protections afforded by the due process clause when a public employee is dismissed. Appellant, a high school teacher, was dismissed at the midpoint of a one-year contract. The board dismissed him without a pre-termination hearing but did conduct a full evidentiary hearing one month later. It affirmed its earlier decision to terminate.

Appellant brought this section 1983 action against the district and board members, alleging that both liberty and property interests were damaged because the evidentiary hearing was insufficient and because a pre-termination hearing was also necessary. The district court found that permanent dismissal could be sustained because the evidentiary hearing was adequate, but assessed relatively minor damages for failure to hold a pre-termination hearing. In this court, the appellant employee insists that the subsequent hearing was insufficient to sustain the dismissal. The district cross-appeals, contending that no property or liberty interest was implicated at all.

We agree with the district court that the post-termination hearing can support the permanent dismissal but that some damages are proper for failure to hold a pre-termination hearing. We remand on this latter point, finding it was error to award damages for the deprivation of a property interest in view of the validity of the subsequent dismissal but concluding further that some damages may be appropriate for injury to a liberty interest from the failure to hold a pre-termination hearing.

Appellant, George Vanelli, was hired by the school district to teach sophomore English at Reynolds High School during the 1975–76 school year under a probationary contract which ran for one academic year, and which reserved the school board's right to discharge the teacher "for any cause deemed in good faith sufficient by the Board." Or.Rev.Stat. § 342.835. Midway through the year, some female students complained of offensive conduct by Vanelli. An assistant principal called him to discuss the matter and when Vanelli arrived he was given a letter notifying him of suspension.[1] The meeting lasted a few minutes and Vanelli did not attempt to present his side of the case, though he did request to appear at the school board meeting on March 11, 1976, to respond to the charges leveled against him. He was told not to attend and that he would be given an opportunity to respond at a later date. Vanelli made no attempt to present a written rebuttal to the board, apparently because he was under the reasonable impression the board would not consider it.

The school board met for approximately 45 minutes on Sunday, March 11, and, after the school administrators had presented the case against Vanelli, the board voted to terminate his contract without giving him an opportunity to respond to the charges either in person or in writing. Another school board meeting was scheduled for April 7, 1976, to review the termination decision. At that hearing, Vanelli was represented by an attorney and was permitted to cross-examine the witnesses, all of whom testified under oath. Four of the five girls who filed the complaints were present (the fifth was ill), and the hearing was tape recorded.

Despite certain objections to the procedures at the hearing, the board upheld the earlier dismissal.[2] Soon thereafter, Vanelli sought employment at other high schools, but found difficulty in securing a perma-

---

[1]. Shortly after the second semester had begun, Vanelli learned that two female students had been dropped from one of his classes. Soon thereafter, two more female students were removed from his class. The girls complained that Vanelli stared at their physical attributes and made statements with sexual overtones. More specific incidents were detailed by the girls, but most seemed innocuous or susceptible to differing interpretations.

Based on these complaints, the assistant principal informed Vanelli his contract would not be renewed at the end of the school year. As a consequence, Vanelli contacted a teachers' organization to represent him at a meeting with the school superintendent slated for March 9, 1976, to discuss the complaints. A day before the scheduled meeting, however, a fifth complaint by a female student surfaced. Vanelli was informed the next day that the meeting for that night would be to discuss his immediate dismissal rather than the complaints.

[2]. Vanelli objected to the procedures on several grounds: (1) the board was not impartial because it had dismissed him in the prior March 11 meeting; (2) the board placed the burden of proof on him to demonstrate that his prior dismissal was "wholly inappropriate" or "wholly without basis in fact"; and (3) one of the witnesses against him was the girlfriend of the son of one of the school board members.

nent position due to the circumstances surrounding his dismissal from Reynolds.

The fourteenth amendment's guarantee of procedural due process applies when a constitutionally protected liberty or property interest is at stake. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). An interest in property arises only when there is a legitimate claim of entitlement, rather than an abstract need or desire for the particular benefit. *Id.* at 577, 92 S.Ct. at 2709. It is well established that an employee dismissed during the term of a one-year contract and in breach of its provisions has a legitimate claim of entitlement and a property interest in continued employment.[3] Under Oregon law, moreover, that interest is not eliminated by a baseless termination even though a probationary teacher's contract specifically provides for midyear dismissals "for cause" pursuant to Or.Rev.Stat. § 342.835.[4] Accordingly, we hold appellant's midyear dismissal implicated a property interest protectible under the due process clause.

Appellant's interest in liberty is similarly implicated if a charge impairs his reputation for honesty or morality.[5] The procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the

---

3. *See, e.g., Roth, supra*, 408 U.S. at 576–77, 92 S.Ct. at 2708–09; *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); *Kendall v. Board of Educ. of Memphis City*, 627 F.2d 1, 4 (6th Cir. 1980).

4. *Vanderzanden v. Lowell School Dist. No. 71*, 369 F.Supp. 67, 73 (D.Or.1973). *See Davis v. Oregon State Univ.*, 591 F.2d 493, 497 (9th Cir. 1978); *Papapodopoulos v. Oregon State Bd. of Higher Educ.*, 14 Or.App. 130, 169, 511 P.2d 854, 872 (Ct.App.), *rev. denied* (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974).

Property interests, of course, are "created ... by existing rules or understandings that stem from an independent source such as state law ...." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *see Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann*, 408 U.S. 593, 602 n.7, 92 S.Ct. 2695, 2700 n.7, 33 L.Ed.2d 570 (1972). The school district refers us to the recent Oregon Court of Appeals opinion in *Maddox v. Clackamas County School Dist. No. 25*, 51 Or. App. 639, 643, 626 P.2d 924, 926 (Ct.App.), *rev. granted*, (1981), arguing the court ruled that Or.Rev.Stat. § 342.835 confers no property interest to probationary teachers in their jobs.

The opinions in the *Maddox* case are not pellucid. The case seems to have involved two technical questions of state administrative procedure, namely, the degree of discretion in the school board and whether a dismissed probationary teacher should appeal to the Fair Dismissal Appeals Board or to a Circuit Court by writ of review. Read literally, the *Maddox* opinion does establish procedural protection for probationary teachers, and therefore a property interest of some sort, but how much and what kind is murky.

Although *Maddox* arguably could stand for the broader proposition that probationary teachers have at best a minimal property inter-

est in their jobs, we are not bound to accept that state law interpretation of an intermediate state court, especially when it is ambiguous at best and we are persuaded the Oregon Supreme Court would not so hold. *See, e.g., Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *see Commercial Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210, 212 (9th Cir. 1981); *Plyler v. Wheaton Van Lines*, 640 F.2d 1091, 1093 (9th Cir. 1981).

To read *Maddox* as defendants would have us do would be both analytically unsound and contrary to the precedents cited in the text. The two cases cited by the *Maddox* court in support of the proposition at issue here involved instances of *nonrenewals* of contracts, rather than midyear dismissals—a critical distinction. While on remand, should the Oregon Supreme Court, which has granted review of the case, decide that probationary teachers have no protectible property interest, the damages award must be adjusted accordingly.

The school district also cites *Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) to support its contention that appellant "held his position at the will and pleasure" of the school district. *Bishop* is distinguishable in that the key fact there, absent in this case, was that the petitioner's employment contract contained no provision for duration or termination of employment. *Id.* at 345 n.9, 96 S.Ct. at 2078 n.9.

5. *Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707. *See Davis v. Oregon State Univ.*, 591 F.2d 493, 498 (9th Cir. 1978). As noted by the court in *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361 (9th Cir. 1976): "[One's] liberty interest is implicated only when the state makes a 'charge against him that might seriously damage his standing and associations in his community.'" *Id.* at 365 (quoting *Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707).

charge, and it is made in connection with the termination of employment or the alteration of some right or status recognized by state law.[6] Under these principles, appellant's midyear dismissal implicated a protectible liberty interest.[7]

We must decide next whether the timing and procedures of the hearing provided by the school district adequately protected appellant's property and liberty interests. We are met at the outset with the school district's contention that a post-termination hearing is sufficient compliance with the due process clause. Under the circumstances of this case, however, we cannot agree.

▮▮▮▮ There is a strong presumption that a public employee is entitled to some form of notice and opportunity to be heard before being deprived of a property or liberty interest.[8] *Goss v. Lopez*, 419 U.S. 565, 574–75, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975); *Goldberg v. Kelly*, 397 U.S. 254, 264,

90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970); *Endicott v. Huddleston*, 644 F.2d 1208, 1216 (7th Cir. 1980); *Old Dominion Dairy Prods., Inc. v. Secretary of Defense*, 631 F.2d 953, 968 (D.C.Cir.1980). *See Ingraham v. Wright*, 430 U.S. 651, 678–79, 97 S.Ct. 1401, 1416, 51 L.Ed.2d 711 (1977). Apart from this general presumption, a court should analyze whether the timing of a hearing comports with due process, given the exigencies and circumstances of any particular case, according to the three part balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 367 (9th Cir. 1976); *see Peacock v. Board of Regents*, 510 F.2d 1324, 1328 (9th Cir.), *cert. denied*, 422 U.S. 1049, 95 S.Ct. 2668, 45 L.Ed.2d 701 (1975). The factors to consider include the private interest that will be affected, the risk of an erroneous deprivation of that interest through the procedures used, and the fiscal and adminis-

---

**6.** *Codd v. Velger*, 429 U.S. 624, 627–28, 97 S.Ct. 882, 883–84, 51 L.Ed.2d 92 (1977), *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976), *Paul v. Davis*, 424 U.S. 693, 710–12, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976).

**7.** The school district dismissed Vanelli on grounds of immoral conduct, conduct that he still maintains was innocent. The lower court found public disclosure sufficient to affect adversely appellant's opportunities for future employment, a finding which is not clearly erroneous. The stigma associated with appellant's termination entitled him to procedural due process protections.

**8.** The lower court's ruling that the post-termination hearing provided sufficient protection for the liberty interest finds no support in the decisional law. Given the premise that the property interest required a pre-termination hearing, the liberty interest easily could have been protected in the same proceeding. Under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), as discussed *infra*, even the temporary cloud on appellant's reputation could be sufficient to overcome minimal administrative burdens and to warrant a pre-termination hearing to comport with due process. Even though a post-termination hearing provides one with an opportunity to clear his name, as well as to regain any improperly withheld benefits, compensable damages may arise for mental and emotional distress arising from the initial denial of due process. *See Carey v. Piphus*, 435 U.S. 247,

259–64, 98 S.Ct. 1042, 1050–52, 55 L.Ed.2d 252 (1978).

In reaching its conclusion, the lower court relied on a discussion in the plurality opinion of *Arnett v. Kennedy*, 416 U.S. 134, 156–58, 94 S.Ct. 1633, 1645–46, 40 L.Ed.2d 15 (1974). But a majority of the Justices did not adopt this position, and subsequent cases demonstrate the presumption favoring pre-termination hearings. *See, e.g., Ingraham v. Wright*, 430 U.S. 651, 678–79, 97 S.Ct. 1401, 1416, 51 L.Ed.2d 711 (1977); *Goss v. Lopez*, 419 U.S. 565, 574–75, 95 S.Ct. 729, 736, 42 L.Ed.2d 752 (1975).

Two recent cases in this circuit are not to the contrary. In *Ybarra v. Bastian*, 647 F.2d 891, 893–94 (9th Cir. 1981), the court held that a criminal trial subsequent to an employee's termination provided adequate protection for any liberty interest that might have been implicated. Though the court concluded that no liberty interest existed, the case is distinguishable in that the circumstances that prompted the dismissal, an alleged murder of a fellow employee, created an emergency situation. It is further likely that the employee was provided with sufficient notice and opportunity to be heard at the indictment stage. In *Graves v. Duganne*, 581 F.2d 222, 224 (9th Cir. 1978), the court originally had held a post-termination hearing sufficient to protect a liberty interest in a nonrenewal case, but later acknowledged its opinion had been vitiated and presumably retracted it. *Graves v. Duganne*, 620 F.2d 749 (9th Cir. 1980).

trative burdens that any additional procedural requirements would entail. *Mathews, supra,* 424 U.S. at 335, 96 S.Ct. at 903.

Application of this balancing test necessarily compels our determination that under these circumstances a pre-termination hearing is constitutionally required. The weight of the private interest affected is apparent. Teaching had been Vanelli's livelihood for over sixteen years, and the stigma arising from a midyear dismissal on the grounds here asserted would seriously impair opportunities for future employment. The interest of the school district in dismissing, rather than merely suspending, Vanelli without affording him a hearing is less clear. The lower court found no emergency situation requiring immediate dismissal, and on this record we cannot say the finding was clearly erroneous.[9] The risk of an erroneous deprivation was substantial, since appellant was dismissed without an opportunity to confront the evidence and was denied the opportunity to respond to the charges at the school board meeting. The administrative burdens of permitting appellant to appear at the March 11 school board meeting and rebut the charges made against him or present a written rebuttal were minimal. In denying appellant's request to attend the March 11 meeting and thereby proceeding to dismiss him without any opportunity to be heard in person or in writing, the board deprived him of property and liberty interests without due process.

Appellant characterizes the April 7 hearing as a mere review of the March 11 termination decision and, accordingly, claims his right to a de novo trial was violated.[10] Under the circumstances of this case, however, we cannot agree that the April 7 hearing was unconstitutionally infirm because of the board's participation in the prior termination decision. Irrespective of whether the April 7 hearing is labeled a review of a prior hearing or a de novo hearing, the critical inquiry is whether it comported with due process. The key component of due process, when a decisionmaker is acquainted with the facts, is the assurance of a central fairness at the hearing. *See Withrow, supra,* 421 U.S. at 46, 95 S.Ct. at 1463; *Vance v. Chester County Bd. of School Trustees,* 504 F.2d 820, 826 (4th Cir. 1974). Essential fairness is a flexible notion, but at a minimum one must be given notice and an opportunity to be heard "at a

---

**9.** Immediate action short of outright dismissal, perhaps suspension, did appear justified under the circumstances. The state was nevertheless required to provide appellant an opportunity to respond to the accusations before his permanent dismissal.

**10.** We cannot agree with appellant's contention that the board members' prior participation in the March 11 termination decision, without more, rendered them impermissibly biased at the subsequent hearing. *See Busche v. Burkee,* 649 F.2d 509, 517 (9th Cir. 1981); *Skehan v. Board of Trustees,* 590 F.2d 470, 494 (3d Cir. 1978), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). The district court was correct in finding as a factual matter that appellant failed to rebut the presumption of honesty and integrity applicable to the April 7 hearing. *See Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n,* 426 U.S. 482, 497, 96 S.Ct. 2308, 2316, 49 L.Ed.2d 1 (1976); *Withrow v. Larken,* 421 U.S. 35, 47, 55, 95 S.Ct. 1456, 1464, 1468, 43 L.Ed.2d 712 (1975). The Supreme Court in *Withrow v. Larken, supra,* has upheld the right of a state medical examining board to adjudicate the merits of a disciplinary action in which the board itself had investigated and filed charges. In *Hortonville*

*Joint School Dist. No. 1 v. Hortonville Educ. Ass'n, supra,* the Court went one step further, holding that a state school board's prior involvement in a labor dispute with striking teachers did not prevent it from deciding whether those teachers should be dismissed as a result of that unlawful strike. In both cases, the Court stressed the absence of any personal or financial stake in the outcome sufficient to create a conflict of interest or any personal animosity towards the parties in the proceedings. *Id.* at 491–92, 96 S.Ct. at 2313–14; 421 U.S. at 54–55, 95 S.Ct. at 1468.

Viewed against this background, we cannot agree with appellant that a school board may not rehear its own termination decision in order to comply with procedural due process. Contrary to *Withrow* and *Hortonville,* appellant cites no conflict of interest or claims no personal antagonism shown by the board arising out of the prior dismissal. The board's decision to hold another hearing to grant appellant due process protections is in practical effect no different from a judge or administrator rehearing his own decision after reversal and remand.

meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). An individual must have an opportunity to confront all the evidence adduced against him, in particular that evidence with which the decisionmaker is familiar.

The April 7 post-termination hearing met the standards of fairness required by the due process clause. Appellant's counsel was present, he was permitted to cross-examine all the witnesses (except for one who was ill), and was given ample opportunity to rebut all evidence which the school board had heard on March 11.[11] No issues were raised at the prior meeting which were not thoroughly examined at the subsequent hearing. The board members did not have any personal or financial stake in the action, nor was any personal animosity alleged. For these reasons, we uphold the validity of the subsequent dismissal ac-

tion.[12] *See Bignall v. North Idaho College*, 538 F.2d 243, 247 (9th Cir. 1976).

Appellant finally claims he was denied due process because a board member refused to recuse himself from the April 7 hearing even though his son was dating one of the girls who filed charges against him. Members of a school board in smaller communities may well have some knowledge of the facts and individuals involved in incidents which they must evaluate. Their obligation is to act impartially and in a fair manner. Appellant here has not shown that the board member was disqualified on the ground of bias from participating in the decision before the Board, or that his actions can be said to have deprived appellant of a fair hearing.[13]

Since the rationale of our decision differs from the lower court opinion, we must remand for a redetermination of damages. We do so reluctantly since the result may well be little different than what the

11. We do not reach the question whether under these circumstances there is necessarily a right to cross-examine the complaining witnesses.

12. Citing a footnote in *Withrow*, appellant contends both *Hortonville* and *Withrow* are inapposite to the present action because neither involved an agency which reviewed and evaluated a prior decision. Specifically, appellant relies on the following sentences: "[W]hen review of an initial decision is mandated, the decisionmaker must be other than the one who made the decision under review .... Allowing a decisionmaker to review and evaluate his own prior decisions raises problems that are not present here." 421 U.S. at 58 n.25, 95 S.Ct. at 1470 n.25 (citations omitted). Review, in the ordinary sense of appeal to a different authority, was not mandated here, and appellant's interpretation of *Withrow* is precluded by *Hortonville*.

Appellant relies on *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), a case relating the due process constraints on parole revocation decisions. But the due process limitations in *Morrissey* have not been extended to the school board context. As the *Hortonville* Court stated: "General language about due process in a holding concerning revocation of parole is not a reliable basis for dealing with the School Board's power as an employer to dismiss teachers for cause." 426 U.S. at 491, 96 S.Ct. at 2313. Rather, the relevant focus should center on the nature of the bias and the nature of the interests at stake.

Appellant's argument that he improperly shouldered the burden of proof is similarly without merit. There is evidence in the record indicating that the school board merely put the burden of coming forward on appellant, while it maintained the burden of persuasion. Administrative hearings of this type, moreover, need not have all the procedural protections of trials. *See* Friendly, *Some Kind of Hearing*, 123 U.Pa.L.Rev. 1267 (1975). Thus, assuming the burden of proof was imposed on appellant, at least two courts have upheld similar burdens against constitutional due process challenges. *Chung v. Park*, 514 F.2d 382, 386–87 (3rd Cir.), *cert. denied*, 423 U.S. 948, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975); *Vanderzanden, supra*, 369 F.Supp. at 74. *See generally* K. Davis, Administrative Law of the Seventies, § 14.14 (1976).

13. The vote of the Board was 6 to 0 for discharge. The only alleged impropriety during the Board's deliberations was that the Board member in question made a vague reference to the fact that his son had some hearsay information as to some matters as to which there was clear, direct, and convincing testimony by the participants. It is clear from the record before us that this comment in no way affected the outcome of the Board's decision or prejudiced appellant. *Cf. United States v. Hearst*, 638 F.2d 1190, 1193–94 (9th Cir. 1980) (must demonstrate actual, as opposed to potential, conflict of interest on part of lawyer to establish violation of sixth amendment right to assistance of counsel).

trial court already has decreed. Under *Carey v. Piphus*, 435 U.S. 247, 262–63, 98 S.Ct. 1042, 1051–52, 55 L.Ed.2d 252 (1978), compensable damages for a section 1983 violation include mental and emotional distress actually caused by the denial of procedural due process, not that distress attributable to the justified deprivation. The lower court awarded appellant $2,000 in damages due to mental and emotional distress, but carefully limited that amount to reflect only the failure to protect appellant's interest in property, not liberty. We cannot say, as a matter of law, that an individual necessarily will experience the same intensity and degree of suffering when a procedural deprivation impairs both a liberty and property interest as when it impairs only a property interest. Although we doubt there will be much difference, the lower court was careful to note the distinction, and the interest at stake may have influenced the award of damages. We therefore must remand for a redetermination of compensatory damages in light of our holding that the board failed to protect appellant's liberty interest. On remand, the court should subtract the $1,700 awarded appellant for lost employment benefits, because, although the procedures were deficient, the termination itself was justified. *Carey, supra*, 435 U.S. at 260 & n.15, 98 S.Ct. at 1050 & n.15.

Attorneys' fees should also be recalculated in the event of a different damages award. In so doing, the lower court should refer to the twelve guidelines set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). If, as before, the court views one guideline as controlling, its decision will not amount to an abuse of discretion, so long as it is clear all guidelines were considered. *Manhart v. City of Los Angeles, Dept. of Water and Power*, 652 F.2d 904 (9th Cir. 1981); *Dennis v. Chang*, 611 F.2d 1302, 1308 (9th Cir. 1980).

Judgment VACATED and case REMANDED for redetermination of damages and attorneys' fees. The parties shall bear their own costs on this appeal.