105 Cal.Rptr.2d 586 (2001)
88 Cal.App.4th 147
Richard W. KATZBERG, Plaintiff and Appellant,
v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., Defendants and Respondents.
No. C035456.
Court of Appeal, Third District.
March 30, 2001.
Review Granted July 18, 2001.
*588 Siegel & Yee, Dan Siegel, for Plaintiff and Appellant.
Pahl & Gosselin, Kenneth L. Kann, San Francisco, Nanette Joslyn, El Sobrante, James E. Hoist, John F. Lundberg and Jeffrey A. Blair, Oakland, for Defendants and Respondents.
*587 MORRISON, Acting P.J.
Plaintiff Richard W. Katzberg was removed from his position as chair of the Department of Radiology (the Department) at the University of California Davis Medical Center (University) as the result of an investigation into financial improprieties in the department. Katzberg sued the Regents of the University (Regents) and certain University officials for violation of his liberty interest by stigmatizing his name in terminating him and breach of the covenant of good faith and fair dealing. The trial court granted the Regents' demurrer to the contract claim and motion to strike injunctive relief, damages and attorney fees. The court found the remaining cause of action for violation of due process was moot as Katzberg's only remedy was a name clearing hearing that the Regents had already offered. Katzberg appeals, contending the court erred in granting summary judgment as the Regents' proposal for a name clearing hearing three and a half years later did not remedy the due process violation, damages were available, and the charges against him were constitutionally stigmatizing. He further contends it was error to sustain the demurrer to his contract claim and an abuse of discretion to refuse him discovery. We affirm.

FACTUAL AND PROCEDURAL
BACKGROUND
In 1991, Katzberg was appointed professor and chair of the Department at the University. In February 1996, a University press release announced an investigation of alleged mishandling of funds by the Department. The investigation had been initiated the previous July and included a review of the Department's records for the past five years. The Sacramento District Attorney's Office was involved. At issue were $250,000 allegedly placed inappropriately in radiology accounts for Department expenses and $80,000 placed in unauthorized accounts for social events. Most of this money came from rebates provided by medical equipment vendors pursuant to negotiations with a consortium of more than 100 academic teaching institutions. The following month, on March 1, 1996, the University announced in another press release that "appropriate personnel actions" *589 had been initiated. No specific personnel were named.
On March 21, 1996, Katzberg was terminated as chair of the Department. He remained a tenured professor at the University Medical Center.
Katzberg brought an action against the Regents pursuant to title 42, section 1983 of the United States Code, to vindicate his liberty interests and rights to procedural due process under the Fourteenth Amendment of the United States Constitution. Katzberg alleged the case also arose under the California Constitution. The Regents removed the action to federal court. Katzberg's first amended complaint was dismissed.
A second amended complaint named as defendants the Regents and four University officials. The second amended complaint alleged: "The decision by Chancellor Vanderhoef to terminate Dr. Katzberg from his position as chair of the Department of Radiology was based upon unproved allegations of misconduct against Dr. Katzberg which stigmatize his reputation, seriously impair his opportunities to earn a living and to advance his career as an academic leader, and damage his standing and associations in the medical community. Specifically, the charges against Dr. Katzberg include allegations of financial mismanagement, misuse of university resources, and improprieties in dealings with university vendors. The gist of such allegations was that Dr. Katzberg was guilty of conduct constituting immoral behavior and criminal dishonesty." The complaint further alleged Katzberg had not been provided with a hearing to defend himself and clear his name before the termination.
The second amended complaint included three claims for relief: under title 42 United States Code section 1983, under article I, section 7 of the California Constitution, and breach of the implied covenant of good faith and fair dealing in the agreement by which Katzberg was appointed chair of the Department.
The federal court dismissed the section 1983 claims and remanded to state court the claims under the California Constitution and for breach of covenant.
Katzberg filed a third amended complaint, naming as defendants only the Regents and Larry Vanderhoef, the Chancellor of the University of California, Davis (the Chancellor). The third amended complaint contained the same allegations as quoted above and the lack of a name-clearing hearing. In addition, the complaint detailed the allegations against Katzberg and alleged the Regents and certain employees and agents "made public statements in which they accused Dr. Katzberg of immoral, dishonest, and criminal actions. These statements accused Dr. Katzberg of diverting university funds into unauthorized bank accounts, improperly soliciting funds from university vendors, misusing public resources for social events, and violating both university regulations and state laws. These charges were false." The complaint alleged a violation of Katzberg's liberty interest protected by the article I, section 7 of the California Constitution.
In addition, the complaint alleged Katzberg entered into an employment agreement with the Regents. Under the terms of this agreement he would be appointed chair of the Department; he would exercise authority over personnel, budget, and operations of the Department; he would be granted authority to take all reasonable measures to improve the Department's unsatisfactory performance and improve morale; he would be given authority to raise the prestige and performance of the Department through the recruitment and retention of personnel; and he would receive a negotiated salary of approximately $300,000 annually. Katzberg alleged the Regents breached the covenant of good faith and fair dealing implied in this agreement by the actions taken in removing him as chair of the Department.
The complaint sought preliminary and permanent injunctions requiring the Regents *590 and Vanderhoef to restore Katzberg to his position as chair of the Department, compensatory and general damages, attorney fees and costs.
Defendants demurred to the third amended complaint. They asserted the first cause of action failed because the alleged charges failed to rise to the level of severity required to implicate a constitutional liberty interest. The second cause of action failed because Katzberg was employed by statute rather than contract. Defendants moved to strike the requests for injunctive relief, damages and attorney fees.
The trial court overruled the demurrer as to the first cause of action, sustained it without leave to amend as to the second, and granted the motion to strike.
Katzberg then moved to compel deposition discovery. Defendants opposed discovery, contending Katzberg's sole remedy was a name-clearing hearing and the depositions he sought were not reasonably calculated to lead to discovery of admissible evidence.
Defendants moved for summary judgment. They argued the first cause of action was moot as defendants had offered the only remedy available to Katzberg. They further argued the first cause of action was without merit because the alleged false statements were not stigmatizing.
In support of their motion for summary judgment, defendants provided a series of letters between the Regents and Katzberg's attorney concerning a name-clearing hearing. The Regents first offered a name-clearing hearing on October 29, 1999. The proposal was for a limited hearing that did not rehash issues before the committee on privilege and tenure.[1] The Regents requested notice of the specific allegations of false public charges as a condition precedent to the hearing.
Katzberg responded he was willing to participate in such a hearing, but its scope had to permit him to present all relevant evidence in his defense, including that relating to the privilege and tenure hearing. The parties needed to meet and confer on the process for the hearing.
Subsequent letters indicated the parties had not agreed to the terms and conditions of a name-clearing hearing.
In opposition to the summary judgment motion, Katzberg disputed that he had been offered a name-clearing hearing.
The trial court found the only remedy for deprivation of Katzberg's liberty interest was a name-clearing hearing that had been offered. Although Katzberg disputed the specific procedures for the hearing, the court was not persuaded the hearing offered was legally deficient. Katzberg failed to raise a triable issue of fact as to whether he had been offered all the relief to which he was entitled. The motion for summary judgment was granted and the request for a continuance to obtain discovery was denied.

DISCUSSION

I
Katzberg concedes he had no property interest in his position as chair of the Department because he held that position at the discretion of the Chancellor. He alleged defendants violated his liberty interest in removing him as chair of the Department on the basis of false charges that impugned his good name. That liberty interest was recognized in Board of Regents v. Roth (1972) 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558(Roth).[2] (See also Murden v. County *591 of Sacramento (1984) 160 Cal.App.3d 302, 308, 206 Cal.Rptr. 699; Lubey v. City and County of San Francisco (1979) 98 Cal. App.3d 340, 346, 159 Cal.Rptr. 440.) In Roth, a university professor who did not have tenure was informed he would not be rehired; he was given no reasons nor an opportunity to challenge the decision at a hearing. The high court held the professor had not been deprived of a property or liberty interest. It noted the non-renewal had not been based on a charge he had been guilty of dishonesty or immorality. "For `[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential' [Citations.] In such a case, due process would accord an opportunity to refute the charge before University officials." (Roth, supra, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548.)
Where the government infringes upon a person's liberty interest by depriving him of a government benefit in a stigmatizing manner, "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is `an opportunity to refute the charge.' [Citation.]" (Codd v. Velger (1977) 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92, 96.) "The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons." (Board of Regents v. Roth, supra, 408 U.S. 564, 573, fn. 12, 92 S.Ct. 2701, 33 L.Ed.2d 548.)
Katzberg contends the Regents' offer of a name-clearing hearing, three and one-half years after his chairmanship was terminated, was insufficient to remedy the violation of his liberty interest. He does not indicate in what manner the hearing should be conducted to be adequate. He notes there is scant case law on remedy as many cases are resolved on the basis of finding no deprivation of a liberty interest. Relying on Vanelli v. Reynolds School Dist. No. 7 (9th Cir.1982) 667 F.2d 773, Katzberg contends the proper remedy includes damages.[3] Thus, he is challenging the trial court's ruling both as to the summary judgment motion and the motion to strike damages.
In Vanelli a high school teacher was dismissed midway through a one-year contract. He was dismissed without a pretermination hearing, but did receive a full evidentiary hearing a month later. Vanelli brought a section 1983 action against the school district and board members for violation of his liberty and property interests. The Ninth Circuit found the dismissal before expiration of the contract, based on charges of offensive conduct with students, violated both Vanelli's property and liberty interests and that he should have been given a pre-termination hearing. (Vanelli v. Reynolds School Dist. No. 7, supra, 667 F.2d 773, 777-779.) It found the post-termination hearing met the standards of fairness required by the due process clause. (Id. at p. 780.) The court remanded the case for determination of compensable damages for mental and emotional distress caused by denial of the procedural due process. (Id. at p. 781.)
Katzberg contends that if the four-week delay in holding a hearing was sufficient in Vanelli to support an award of damages, certainly the three- and one-half year delay here will support an award of damages. *592 Katzberg overlooks a critical distinction between Vanelli and his case. Plaintiffs suit in Vanelli was brought under section 1983 of title 42 of the United States Code, which allows mental and emotional distress damages. There was enabling legislation to support a tort action. Here Katzberg's action is brought under the California Constitution; there is no enabling statute.
Whether a party may obtain money damages for a violation of the state constitution's due process provision was recently considered in Carlsbad Aquafarm, Inc. v. Department of Health Services (2000) 83 Cal.App.4th 809, 100 Cal.Rptr.2d 87 (Aquafarm). In Aquafarm, plaintiff brought suit for damages to recover profits it would have received if the State Department of Health Services had not refused to complete a certain federal form that resulted in Aquafarm being removed from the "Interstate List" of approved shellfish operators. Aquafarm alleged the department violated its due process rights by failing to give notice and a hearing before deciding not to complete the necessary form. The jury found in Aquafarm's favor and awarded damages of $290,000. (Id. at pp. 812-815, 100 Cal.Rptr.2d 87.)
On appeal the Department contended the trial court erred in permitting the jury to award monetary damages. The appellate court began its analysis by reviewing federal law on the existence and scope of a "constitutional tort." (Aquafarm, supra, 83 Cal.App.4th at pp. 815-816, 100 Cal. Rptr.2d 87.) The concept of a constitutional damages claim was first recognized in (Bivens v. Six Unknown Fed. Narcotics Agents (1971) 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (Bivens).) Reasoning that federal courts may use any available remedy to make good the invasion of a legal wrong, the Supreme Court held the victim of a Fourth Amendment violation by federal officers may bring suit in federal court against the officers for damages. (Id. at pp. 390-397, 91 S.Ct. 1999.) The Aquafarm court noted that more recently, however, the United States Supreme Court was more reluctant to recognize a right to damages for alleged due process violations. (Aquafarm, supra, at p. 816, 100 Cal. Rptr.2d 87.)
California case law also presented a mixed picture on whether state constitutional provisions supported a constitutional tort action. (Aquafarm, supra, 83 Cal. App.4th at p. 816, 100 Cal.Rptr.2d 87.) "On reviewing these decisions, we believe the issue of whether to recognize a state constitutional tort is essentially one of policy and is dependent on numerous factors, including (1) the voters' intent in permitting monetary damages for a violation of the particular constitutional provision, (2) the availability of another remedy, (3) the extent to which the provision is `self-executing' and the judicial manageability of the tort; and (4) the importance of the constitutional right." (Id. at p. 817, 100 Cal.Rptr.2d 87.) Applying these factors, the court determined Aquafarm was not entitled to recover money damages. (Ibid.)
We agree with Aquafarm's analysis insofar as a court should determine whether damages are an available remedy for a constitutional violation by looking to the intent of the voters in adopting the constitutional provision and the extent to which the provision is "self-executing." The availability of an alternative state remedy aids in that analysis. (83 Cal.App.4th at p. 817, 100 Cal.Rptr.2d 87.)
"The most significant factor in California constitutional tort analysis is the voters' intent underlying the particular constitutional provision. [Citations.]" (Aquafarm, supra, 83 Cal.App.4th at p. 817, 100 Cal.Rptr.2d 87.) California's constitutional due process provision is in article I, section 7 of the state Constitution, and provides: "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws...." Nothing in this provision expressly allows for a damages action. (Aquafarm, supra, at p. 817, 100 Cal. *593 Rptr.2d 87.) Moreover, a remedy of requiring due process where the right to procedural due process is violated is implicit in the constitutional command, whereas a right to monetary damages is not.
In Gates v. Superior Court (1995) 32 Cal.App.4th 481, 516-525, 38 Cal.Rptr.2d 489 (Gates), the court undertook an exhaustive analysis of the documents before the voters when the various equal protection provisions of the state Constitution were adopted and concluded plaintiffs could not sue for damages under article I, section 7 for a violation of their equal protection rights. We agree with Aquafarm that nothing in the voter materials suggests the voters intended to provide a damage remedy for procedural due process violations. (Aquafarm, supra, 83 Cal. App.4th at p. 818, 100 Cal.Rptr.2d 87.)
The current due process provision was adopted by the voters as part of Proposition 7 on November 5, 1974. The "Analysis by Legislative Analyst" in the voter pamphlet indicates Proposition 7 "puts into the Constitution some rights which now exist in the federal Constitution, ..." (Ballot Pamp., Gen. Elec. (Nov. 5, 1974), analysis of Prop. 7 by Legislative Analyst, p. 26.) This analysis further provides: "This proposition does not increase government costs." (Ibid.) There is nothing in these voter materials from which we can reasonably infer the voters intended to create a damages remedy for procedural due process violations. (Aquafarm, supra, at p. 818, 100 Cal.Rptr.2d 87.)
While embracing the decision in Gates, supra, 32 Cal.App.4th 481, 38 Cal.Rptr.2d 489, Division Three of the Fourth District could not say categorically that money damages were precluded for due process violations by its analysis. (Bonner v. City of Santa Ana (1996) 45 Cal.App.4th 1465, 1474, 53 Cal.Rptr.2d 671.) In Bonner, a homeless man sued the city after garbage bags containing all his possessions were thrown out by city employees. In finding the voters' intent less clear than the Gates court, the Bonner court focused on the portion of the voter pamphlet that indicated: "The proposition puts the following three rights into the State Constitution. These rights presently are contained in the Federal Constitution." (Ballot Pamp., op. cit. supra, at p. 26.) The Bonner court concluded the voters intended to put in the State Constitution what was in the federal, and under Davis v. Passman (1979) 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (Davis), violations of federal due process rights could be enforced by an action for money damages. (Bonner, supra, at p. 1474, 53 Cal.Rptr.2d 671.) The Davis decision, however, was predicated on the lack of an alternative remedy; since the plaintiff in Bonner had an alternative remedy, a conversion action, he had no right to money damages for violation of his due process or equal protection rights. (Id. at pp. 1475-1476, 53 Cal.Rptr.2d 671.)
The Aquafarm court found the Bonner analysis unpersuasive for three reasons. "First, [Davis], supra, 442 U.S. 228 [99 S.Ct. 2264, 60 L.Ed.2d 846], and the subsequent United States Supreme Court authority relied upon by Bonner were decided after Proposition 7's adoption by the voters. It is not reasonable to infer from the single statement in the voter's pamphlet that the voters would have predicted the United States Supreme Court's extension of Bivens, supra, 403 U.S. 388 [91 S.Ct. 1999, 29 L.Ed.2d 619] to a procedural due process claim. Second, the language in the voter pamphlet relied upon by the Bonner court states only that Proposition 7 puts `rights' into the state Constitution that'"presently are contained in the Federal Constitution."` (Bonner, supra, 45 Cal.App.4th at p. 1474 [53 Cal.Rptr.2d 671], italics omitted.) This statement does not necessarily mean the voters would have understood they were adopting the analysis of the United States Supreme Court with respect to the existence of a damages remedy pertaining to those rights. Third, and perhaps most important, Davis v. Passman was not a procedural *594 due process claim as is presented here. In [Davis], supra, a former congressional staff member alleged her federal equal protection rights were violated when her boss, a former United States congressperson, discriminated against her based on her gender. ([Davis], supra, 442 U.S. at pp. 234-236 [99 S.Ct. 2264].) At that time, the plaintiff was not covered under title VII of the Civil Rights Act or internal congressional administrative rules. Relying on Bivens, supra, the high court held a damages remedy was appropriate in the case because there were no other available remedies. ([Davis], supra, at pp. 245-248 [99 S.Ct. 2264].) The [Davis] holding, therefore, is closer to Gatesan equal protection casethan it is to Bonner and to this case, which raise procedural due process claims." (Aquafarm, supra, 83 Cal.App.4th 809, 818-819, 100 Cal. Rptr.2d 87; original italics.)
While in Gates, supra, 32 Cal.App.4th 481, at page 525, 38 Cal.Rptr.2d 489, the court stopped its analysis after determining there was no intent to provide a damages remedy, Aquafarm noted that other cases have not. For example, in Gay Law Students Assn. v. Pacific Tel. & Tel. Co. (1979) 24 Cal.3d 458, at page 475, 156 Cal.Rptr. 14, 595 P.2d 592, the California Supreme Court held plaintiffs stated a cause of action for equal protection violations under article I, section 7 of the California Constitution, citing to the portion of Bivens v. Six Unknown Fed. Narcotics Agents, supra, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 allowing money damages. Trying to harmonize the various decisions, the Aquafarm court considered that while the voters' intent was the most important factor, other factors were relevant, such as whether there is an alternative remedy available. (Aquafarm, supra, 83 Cal. App.4th at p. 820, 100 Cal.Rptr.2d 87.) The court noted that Aquafarm could have petitioned the superior court for a writ of mandate ordering the Department to provide it with due process before it refused to issue the form required for inclusion on the "Interstate List." (Id. at p. 821, 100 Cal. Rptr.2d 87.) Further, the court noted that Aquafarm had an equally effective remedy in a federal 42 United States Code section 1983 action against individual department employees. (Id. at p. 822, 100 Cal.Rptr.2d 87.)
We agree with Aquafarm that the availability of alternative remedies is relevant to ascertaining the intent to afford monetary remedies for a violation of a constitutional provision. In Davis, supra, 442 U.S. 228, 245, 99 S.Ct. 2264, 60 L.Ed.2d 846, the United States Supreme Court, in finding a damages remedy available for violation of the equal protection component of the due process clause of the Fifth Amendment, noted alternative forms of judicial relief were not available. "And, of course, were Congress to create equally effective alternative remedies, the need for damages relief might be obviated. [Citation.]" (Id. at p. 248, 99 S.Ct. 2264.) Unlike Aquafarm, however, we would limit the consideration of alternative remedies to those available under state law. We do not understand how a federal remedy serves to vindicate a state constitutional violation. Katzberg had an effective alternative state remedy; he could have petitioned for a writ of mandate compelling the Regents to give him a name-clearing hearing.[4] Also, since the liberty interest at stake is the stigmatization of the manner in which he lost the position of chair, he could have brought a defamation action. (See, e.g., Nadel v. Regents of the University of California (1994) 28 Cal.App.4th 1251, 34 Cal.Rptr.2d 188; Toney v. State of California (1976) 54 Cal.App.3d 779, 126 Cal.Rptr. 869.) The availability of alternative remedies militates against finding a monetary remedy for violation of Katzberg's due process rights.
*595 The third factor the Aquafarm court considered is the extent to which the constitutional provision is "self-executing." (Aquafarm; supra, 83 Cal.App.4th at p. 822, 100 Cal.Rptr.2d 87.) While difficult to apply, "the `self-executing' analysis is helpful in the sense that it focuses a court's attention on the extent to which a constitutional provision includes `guidelines, mechanisms, or procedures from which a damages remedy could be inferred.' [Citation.]" (Ibid.) The due process provision reflected general principles without guidelines how to enforce those principles and there were substantial inherent difficulties in proving damages as a result of denial of a hearing. (Ibid.)
The practical problems in awarding damages for denial of a name clearing hearing are a convincing argument against a damages remedy. In Davis, supra, 442 U.S. 228, 99 S.Ct. 2264, a damage award posed no difficulty because courts had great experience in evaluating claims for backpay due to unlawful discrimination. "Relief in damages would be judicially manageable, for the case presents a focused remedial issue without difficult questions of valuation or causation." (Id, at p. 245, 99 S.Ct. 2264.) Here, both the questions of valuation and causation are difficult. What is the value of a name-clearing hearing? No rules have been laid down to guide such a determination of damages. To prove substantial damages, Katzberg would have to prove not only that he did not receive a hearing, but that he would have been successful in clearing his name at such a hearing.
Following the analysis of Aquafarm, supra, 83 Cal.App.4th 809, 100 Cal.Rptr.2d 87, we find Katzberg had no right to recover damages for violation of his due process right to a name-clearing hearing. The language of the constitutional provision and the materials before the voters do not permit the inference that the voters intended to create a damage remedy; Katzberg had alternative remedies available; the due process provision is not "self-executing" in the sense that it provides guidelines for a damages remedy or for determining the amount of damages for failure to hold a hearing; and nothing in the nature of due process rights compels a monetary recovery as opposed to the right to a hearing.
Since a damages remedy was not available, the trial court did not err in granting defendants' motion to strike the damage relief.
At oral argument Katzberg argued that even if damages were unavailable, he had a remedy in a declaratory judgment that the Regents violated his liberty interest. Katzberg's third amended complaint sought only injunctive and monetary relief, not declaratory relief. On appeal he does not challenge the ruling striking his request for injunctive relief. A summary judgment motion need only address those issues raised in the complaint. (Lewinter v. Genmar Industries, Inc. (1994) 26 Cal.App.4th 1214, 1223, 32 Cal.Rptr.2d 305; FPI Development, Inc. v. Nakashima (1991) 231 Cal.App.3d 367, 381, 282 Cal.Rptr. 508.) Katzberg failed to raise a triable issue of fact as to the question of remedy and the trial court did not err in granting defendants' motion for summary judgment.
Since we determine the correctness of the ruling on this basis, like the trial court, we need not determine whether the alleged charges were constitutionally stigmatizing.

II
Katzberg contends the trial court erred in sustaining the demurrer to his contract claim. He asserts that a public employee may bring a claim for breach of contract.
"[I]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual *596 right to continue in employment beyond the time or contrary to the terms and conditions fixed by law. [Citations.]" (Miller v. State of California (1977) 18 Cal.3d 808, 813, 135 Cal.Rptr. 386, 557 P.2d 970.) In Hill v. City of Long Beach (1995) 33 Cal.App.4th 1684, 40 Cal.Rptr.2d 125, the court rejected the argument that this general principle of law is limited to civil service employees. The court found a city employee who had lost his management job was as a matter of law not entitled to contract remedies. "His remedies, if any, were confined to those provided by statute or ordinance." (Id. at p. 1690, 40 Cal.Rptr.2d 125.) In Kim v. Regents of the University of California (2000) 80 Cal. App.4th 160, 95 Cal.Rptr.2d 10 (Kim), the court affirmed a decision sustaining the Regents' demurrer to a University employee's contract claim. Relying on Miller, supra, and Hill, supra, the court found the University employee could not state a claim for breach of the implied covenant against the Regents. (Kim, supra, at pp. 164-165, 95 Cal.Rptr.2d 10.)
Katzberg contends that construing the principle articulated in Miller v. State of California, supra, 18 Cal.3d 808, 135 Cal. Rptr. 386, 557 P.2d 970 to prevent any public employee from bringing a breach of contract claim ignores the reality of public employment in California. Many agencies, he asserts, are permitted by statute to contract with employees. Citing the constitutional provision that empowers the Regents to administer the University (Cal. Const., art. IX, § 9, subd. (a)), Katzberg contends the Regents may enter into contracts and concludes he properly alleged the existence and breach of such a contract.
Even assuming Katzberg held his employment pursuant to contract, the implied covenant cannot be construed to contravene an express provision of statute. The University's Academic Personnel Manual provides: "The department chairperson serves at the discretion of the Chancellor." Such a policy "established by the Regents as matters of internal regulation may enjoy a status equivalent to that of state statutes [citation]." (Regents of University of California v. City of Santa Monica (1978) 77 Cal.App.3d 130, 135, 143 Cal. Rptr. 276.) Katzberg cites to no authority that would permit the Regents to enter into a contract that contradicts this provision, nor does he allege any contractual provision that limits the discretion of the Chancellor. Just as the implied covenant cannot be used to overrule an express at-will provision in an employment contract (Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 350, 100 Cal.Rptr.2d 352, 8 P.3d 1089), it cannot be used to overrule the Regents' policy that grants the Chancellor discretion to appoint or terminate department chairs.
At oral argument, Katzberg acknowledged the policy granting the Chancellor discretion in the selection of department chairs. He argued the complaint alleged certain commitments to him that raised the implication that the Chancellor's discretion would be limited. Such an interpretation of his employment contract would violate "`the general principle that, in interpreting a contract "an implication ... should not be made when the contrary is indicated in clear and express words." [Citation.] ...' [Citation.]" (Carma Developers (Cal.), Inc. v. Marathon Development California, Inc. (1992) 2 Cal.4th 342, 374, 6 Cal.Rptr.2d 467, 826 P.2d 710.)
The trial court properly sustained the demurrer to Katzberg's contract claim.

III
Finally, Katzberg contends the trial court abused its discretion in refusing to allow him to conduct deposition discovery by denying his request to compel discovery. Katzberg sought to depose certain University officials and employees to determine what they knew of the charges against him. He argues he had a right to conduct discovery.
*597 Katzberg appears to concede that the evidence he sought to obtain through the proposed discovery would be relevant only to whether the charges were constitutionally stigmatizing and his claim for damages, not to his legal right to damages or to bring a contract claim. "`Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered.' " (Denham v. Superior Court (1970) 2 Cal.3d 557, 566, 86 Cal.Rptr. 65, 468 P.2d 193.) Since the summary judgment ended Katzberg's case, the trial court did not abuse its discretion in denying the motion to compel discovery.

DISPOSITION
The judgment is affirmed.
CALLAHAN, J., and KOLKEY, J., concur.
NOTES
[1] A hearings subcommittee of the committee on privilege and tenure recommended to the Chancellor a written censure of Katzberg. The subcommittee found that Katzberg reported vendor rebates as gifts so he had discretionary control over the funds, which were used for Department purposes, such as training.
[2] This liberty interest was recognized under the due process clause of the Fourteenth Amendment. (Roth, supra, 408 U.S. 564, 572, 92 S.Ct. 2701, 33 L.Ed.2d 548.) By the third amended complaint, Katzberg's due process claim was limited to article I, section 7 of the California Constitution. Neither defendants nor Katzberg argue the liberty interest, or remedy for its deprivation, are different under the state Constitution. Accordingly, we assume without deciding that the liberty interest at issue, and remedy, are the same under the federal and state Constitutions.
[3] Katzberg also relies on Heger v. City of Costa Mesa (Cal.App.). Heger was ordered not published and thus may not be cited. (Cal. Rules of Court, rule 977(a).)
[4] At oral argument the Regents stressed that "at all times" Katzberg had the right to a hearing under University policies. The Regents argued Katzberg had waived that right by failing to request a hearing.